**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BAPTIST HOMES, INC.**
**DBA SON VALLEY**                                                    **PLAINTIFF**

**v.**                                           **CAUSE NO.: 3:24CV-00092-KHJ-MTP**

**CITY OF MADISON, MISSISSIPPI**
**A MUNICIPAL CORPORATION, AND**
**JANE–JOHN DOES I–X**                                              **DEFENDANTS**

---

**PLAINTIFF'S NARRATIVE SUMMARY OF UNDISPUTED FACTS AND**
**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

---

COMES NOW, Plaintiff, Baptist Homes, Inc. d/b/a SON Valley ("Plaintiff" or "Baptist Homes"), and submits this, its Narrative Summary of Undisputed Facts and Memorandum in Support of Motion for Summary Judgment. Baptist Homes incorporates by reference herein each of the documents and facts as set forth in its accompanying Motion for Summary Judgment [Doc. 79].

## I. Introduction

Plaintiff Baptist Homes respectfully requests that the Court enter summary judgment on all its claims against Defendant, City of Madison ("City" or "Madison"). Defendant Madison's admissions establish beyond dispute that it violated the Fair Housing Act ("FHA") and Title II of the Americans with Disabilities Act ("ADA") by failing to grant Baptist Home's multiple requests for a reasonable accommodation and not acting upon Baptist Homes' application for a rental permit for its residence at 405 Drayton Place in Madison, Mississippi ("Drayton Place"). The undisputed facts show that Plaintiff purchased a home with the intent to lease it to a family of unrelated developmentally disabled adults, each of whom requires some manner of necessary support

services to live in the home of their choice within a Madison neighborhood zoned as single-family residential under the City's zoning ordinance. Defendant Madison opposed Baptist Homes' intended use of the property but never expressed exactly why. As a result, and pursuant to the FHA and ADA, Baptist Homes submitted a request for a reasonable accommodation from the City's ostensible interpretation of its zoning ordinance in order to lease the property and collect rent from its residents. Baptist Homes' request was reasonable and necessary in order that these disabled individuals be afforded the opportunity to reside in the home, neighborhood, and community of their choice. Defendant Madison failed to respond or otherwise act upon the requests for reasonable accommodation submitted by Baptist Homes, effectively denying them without merit or explanation. Accordingly, Plaintiff Baptist Homes is entitled to judgment as a matter of law.

## II. Narrative Summary of Undisputed Facts

Baptist Homes is a 501(c) nonprofit that provides necessary residential support services to individuals with disabilities who qualify for programs regulated and certified by the Mississippi Department of Mental Health ("DMH") under the Intellectual Disabilities/Developmental Disabilities ("ID/DD") Medicaid Waiver program. (Ex. 1 Morton Dep. 20:8-20:12 [hereinafter "Morton"]; Ex. 2 DMH Certificates of Operation [hereinafter "DMH Certificates"]). Baptist Homes serves these individuals by providing support services in the homes and communities of their choice. (Ex. 3 Dec. 14, 2023, Letter to Kianca Guyton, at 1 [hereinafter "Dec. 14, 2023 Letter"])

In May of 2023, Baptist Homes purchased a home in the City of Madison. (Dec. 14, 2023, Letter). The house, located at 405 Drayton Place in Madison, is located in an R-1 (single-family residential) zone per Madison's zoning ordinance. (Ex. 4 Guyton Dep. 15:6-15:10 [hereinafter "Guyton"]). Zone R-1 permits land to be used for single-family detached dwellings with only one

principal dwelling per lot. (Ex. 5 Excerpt of City of Madison Zoning Ordinance, at 8 [hereinafter "Zoning Ordinance"]). The City also permits certain accessory land uses in Zone R-1, such as home occupations. (*Id.*)  Baptist Homes sought to have the fire inspection for the property as required by DMH for certification. (Ex. 6 Minor Dep. 11:20-12:3 [hereinafter "Minor"]; Ex. 12 McCormack Dep. 30:5-30:8 [hereinafter "McCormack"]). Baptist Homes contacted Madison's Fire Department to arrange as much. (Minor 13:11-13:20). It was at this time that Madison's Fire Chief became aware of the existence of Plaintiff's ownership of Drayton Place through his department's conversation with a Baptist Homes employee. (Ex. 7 Layton Dep. 10:13-12:7 [hereinafter "Layton"]). Defendant's Fire Chief determined that he would need to contact the Director of Community Development and Planning for the City of Madison for zoning purposes. (*Id.*)

As Director of Community Development and Planning, Kianca Guyton enforces the zoning ordinances. (Guyton 9:20-10:22). She learned about Baptist Homes' purchase of the Drayton Place residence from Chief Layton. (*Id.* at 14:1-16:11). Afterward, Guyton began an investigation into Baptist Homes. (*Id.*) Following her investigation, she sent Baptist Homes a letter on June 1, 2023, which stated: "It was brought to our attention that this residence was purchased to be used as multi-family, a medical facility, or a boarding house." (Ex. 8 June 1, 2023 Letter to Baptist Homes [hereinafter "June 1, 2023 Letter"]). The letter did not explicitly state which land use Guyton believed Baptist Homes intended for the residence. (*Id.*) The letter closed by stating to contact the City if Baptist Homes would like to discuss the matter further, and provided Guyton's contact information. (*Id.*)

President of Baptist Homes, Ron Morton, contacted Guyton in June and then again in December of 2023. (Guyton 22:5-25:4). Specifically, Mr. Morton called Defendant to clarify how

Baptist Homes would use the residence. (*Id.*) Morton explained that Baptist Homes is an organization that provides housing and services to individuals with intellectual disabilities. (*Id.*) According to Defendant Madison's testimony, Guyton stated that Baptist Homes' proposed use "*sounds like* a boarding house." (*Id.* at 23:3-23:5) (emphasis added). Following the initial phone call with Ronald Morton, Guyton did not provide any additional written communication to Baptist Homes or otherwise further document her interaction. (*Id.* at 23:17-23:24, 28:1-28:8). However, Guyton did communicate with legal counsel and brought the matter to their attention. (*Id.* at 25:2-25:21). In December, Morton contacted Guyton a second time. (*Id.*) During the call, Guyton stated that Baptist Homes could speak with the City Attorney and that she would pass the information along. (Guyton 26:21-27:9).

Following the conversation, Baptist Homes wrote to Guyton, memorializing its discussions with the City, and submitted its first request for reasonable accommodation. (Dec. 14, 2023 Letter). The letter explained that Baptist Homes provided support services to intellectually disabled adults, and that it intended to lease the residence to ". . . a single household unit as that term is defined in the City of Madison's rental ordinance" (*Id.*)  Lastly, Baptist Homes clarified its position, stating: "Insofar as the City has concluded that the lease of this premises to four developmentally disabled adults residing together as a single household unit is inconsistent with the property's R-1 zoning designation, please provide me with the basis for this conclusion, and consider this letter our formal request for a reasonable accommodation of that inconsistency." (*Id.*) Defendant admits that Ronald Morton submitted a letter to Kianca Guyton, dated December 14, 2023, with language ". . . formal request for a reasonable accommodation . . . ." (Ex. 13 Defendant's Response to Baptist Homes' First Set of Requests for Admission, No. 4).

Madison's rental ordinance requires persons to receive a Rental License. (Ex. 9 Excerpt from City of Madsion Rental Ordinance, at 7 [hereinafter "Rental Ordinance"]). Baptist Homes applied for a Rental License on January 29, 2024. (Ex. 13 Defendant's Response to Baptist Homes' First Set of Requests for Admission, No. 1). At the time Baptist Homes submitted its application for a Rental License, such applications were sent by the rental office to Madison's legal office. (Guyton 68:8-68:12). Additionally, the City requires a Certificate of Compliance to operate a rental property. (Rental Ordinance, at 8). To obtain a Certificate of Compliance, a property must pass an inspection. (*Id.*) As required by the ordinance, Baptist Homes sought and obtained the necessary permission from the Crescent Landing Owners Association to lease the Drayton Place residence. (Morton 25:2-26:3; Ex. 10 Baptist Homes' Rental Application, at 18 [hereinafter "Rental Application"]). Baptist Homes obtained the necessary bond and transmitted a copy to Madison on January 22, 2024. (*Id.* at 1). Baptist Homes provided a copy of the 405 Drayton Place property deed, documentation confirming Baptist Homes' entity status, and a check for the requisite application fee. (*Id.* at 10-12). Madison issued no decision as to Baptist Home's rental license. (Guyton Dep. 76:6-76:16).

Afterwards, Baptist Homes emailed the City Attorney its second request for reasonable accommodation. (Ex. 11 Feb. 12, 2024 Email to Chelsea Brannon [hereinafter "Feb. 12, 2024 Email"]). In the email, Baptist Homes stated: "If the City has concluded that our intended lease of the premises to four developmentally disabled adults residing together as a single household unit is inconsistent with the property's R-1 zoning designation, as suggested in Kianca Guyton's letter dated June 1, 2023, please provide me with the basis for the City's conclusion. (*Id.*) Madison admits that Baptist Homes emailed Chelsea Brannon on February 12, 2024, which correspondence included language instructing the City of Madison to consider that email as a ". . . second request

for a reasonable accommodation . . . ." (Ex. 13 Defendant's Response to Baptist Homes' First Set of Requests for Admission, No. 5).

### III. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). "The Court views the evidence in the light most favorable to the non-movant." *Abarca v. Metropolitan Transit Authority*, 404 F. 3d 938, 940 (5th Cir. 2005) (citing *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997)). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts show that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56). "Summary judgment is appropriate if the non-movant fails to make a showing sufficient to show the existence of an element essential to that party's case and on which that party has the burden of proof at trial. *Blakney v. Miss. Regional Housing Authority 8*, 2017 WL 2463963, at *1 (S.D. Miss. June 7, 2017).

### IV. Argument

"Under the FHA, it is unlawful '[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling.'" *Women's Elevated Sober Living L.L.C. v. City of Plano, Texas*, 86 F.4th 1108, 1111 (5th Cir. 2023) (quoting 42 U.S.C. § 3604(f)(1)(B)). "Discrimination

includes 'a refusal to make reasonable accommodations in rules [or] policies . . . when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" *Id.* (quoting 42 U.S.C. § 3604(f)(3)(B)). To succeed on a failure to make reasonable accommodations claim, a plaintiff must prove: "(1) the residents of the affected dwelling or home suffer from a disability, (2) they requested an accommodation from the defendant, (3) the requested accommodation was reasonable, and (4) the requested accommodation was necessary to afford the residents equal opportunity to use and enjoy the home." *Id.* (citing *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018)).

The ADA declares that ". . . no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132. To prove discrimination under ADA, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)). In addition to its prohibitions against disability-based discrimination, the ADA ". . . impose[s] upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Id.* (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)).

"For this type of claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the

nature of the limitation was open and obvious." *Id.* at 724 (citing *Windham v. Harris Cty.*, 875 F.3d 229, 236–37 (5th Cir. 2017)). "A plaintiff's requested accommodation must also be 'reasonable,' meaning that it does not impose undue financial or administrative burdens or 'fundamentally alter the nature of the service, program, or activity.'" *Id.* (citing 28 C.F.R. § 35.130(b)(7); *Frame v. City of Arlington*, 657 F.3d 215, 232 (5th Cir. 2011)).

### A.    The Residents of Drayton Place are "handicap" within the meaning of the FHA.

The Fair Housing Act prohibits the City of Madison from using housing practices that discriminate against individuals with disabilities. Specifically, the Act makes it unlawful to discriminate in the sale or rental of a dwelling "because of a handicap of (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available, or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604 (f)(1). A "handicap" is defined as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such impairment." 42 U.S.C. § 3602(h).

Baptist Homes is a 501(c)(3) non-profit organization dedicated to providing support services for individuals with disabilities. (Morton 20:8-20:12). Baptist Homes operates an intermediate care facility in Canton, Mississippi, and community centers that offer day care programs in Ridgeland and Brandon, Mississippi. (*Id.* at 22:13-23:12). Additionally, Baptist Homes provides services to individuals in certified residential housing. (*See* DMH Certificates). All of Baptist Homes' properties serve individuals with various forms of disabilities and who are considered "handicap" within the meaning of the FHA. To qualify for the supervised living program under the ID/DD waiver, the individual receiving services must have a qualifying handicap. 23 Miss. Admin. Code Pt. 208, R. 5.1(B)(3).

The Drayton Place residence is no different, and the individuals residing there are also handicapped within the meaning of the FHA. Baptist Homes provides the necessary residential support services to the individuals living at Drayton Place because the residents suffer from physical and mental impairments that substantially limit their major life activities. (McCormack 49:2-50:1). This is evidenced by the DMH's certification of Baptist Homes for this purpose. Baptist Homes provides the individuals with assistance in personal hygiene, transportation, housecleaning, budgeting, banking, and shopping. (McCormack 49:2-50:1; Morton 92:18-93:11).

Additionally, the City considered the individuals who reside at Drayton Place to be disabled. At the time the City first contacted Baptist Homes to inform it that the City believed Baptist Homes' "intended use" of Drayton Place would violate the City's zoning ordinances, the City had researched Baptist Homes and knew it provided services to individuals with disabilities. (Guyton Dep. 14:17-16:11). The fact Baptist Homes was an organization that worked with disabled individuals was one of the only things the City knew at the time it determined that regardless of the actual intent of Baptist Homes' operation of Drayton Place, it would somehow violate the zoning ordinances. (*Id.*)

### B.    Baptist Homes Requested a Reasonable Accommodation.

Baptist Homes purchased the Drayton Place residence with the intent to lease the home to a family of four individuals with intellectual and developmental disabilities. Drayton Place is located in R-1 zoning which allows for single family residential housing.[1] Baptist Homes believed that its intended use of the residential property complied with the City's zoning ordinance. On June

---

[1] The City of Madison's zoning ordinance defines a family as "[o]ne person living alone, or two or more persons living together as a single housekeeping unit, whether related to each other legally or not, as distinguished from a group occupying a boarding house, lodging house, hotel, motel, dormitory, or similar dwelling for group use. A family shall be deemed to include the domestic servants employed by said family when these servants are on-premise residents" (Zoning Ordinance, at 5).

1, 2023, Baptist Homes first became aware that the City believed it was somehow operating in violation of the zoning scheme when Kianca Guyton, Director of Community Development for the City of Madison, sent Baptist Homes a letter stating that the City believed the residence "was purchased to be used as multi-family, a medical facility, or a boarding house." (June 1, 2023 Letter). The letter informed Baptist Homes that the property was "currently zoned R-1 (Single-family residential)" and that such land uses were not allowable uses in zone R-1. (*Id.*) The letter went on to state that Baptist Homes should "contact me if you would like to further discuss the matter." (*Id.*)

Sometime thereafter, Baptist Homes called Ms. Guyton, as they had been invited, to ascertain the basis of the city's conclusion and "convey what it is that we actually do." (Morton 24:13-24:17). Guyton referred Baptist Homes to the city attorney for further discussion. Baptist Homes made several attempts to contact the city attorney, but all were left unanswered. (Dec. 14, 2023 Letter). Eventually, Baptist Homes reached out to Guyton again to explain that they wished to move forward with leasing the residence at Drayton Place. (*Id.*) Again, Ms. Guyton referred Baptist Homes to the city attorney. Ronald Morton, President of Baptist Homes, followed up this conversation with Guyton by sending her a letter on December 14, 2023, which stated: "Insofar as the City has concluded that the lease of this premises to four developmentally disabled adults residing together as a single household unit is inconsistent with the property's R-1 zoning designation, please provide me with the basis for this conclusion, and consider this letter our formal request for a reasonable accommodation of that inconsistency." (*Id.*) Defendant admitted receiving this letter. (Ex. 4 Guyton Dep. 46:8 – 46:15). Following the Baptist Homes' first request for a reasonable accommodation, Defendant took no action on the request.

Baptist Homes intent when it purchased Drayton Place was to lease it to the four disabled individuals to whom it provided supervised living services. The City requires compliance with its Rental Inspection and Property Licensing Act prior to leasing any residential property. While waiting for Defendant to act on their request for reasonable accommodations, Baptist Homes completed a rental application. Pursuant to the application's requirements, Baptist Homes received the required approval from the Crescent Landing homeowner's association, paid an application fee, posted a bond, and completed all other requirements. After the city took no action on the application, Baptist Homes called to inquire about scheduling the necessary inspections for the property. Defendant told Baptist Homes that it could not inspect the property. Baptist Homes then telephoned the city attorney and was again left with no response.

Following these repeated attempts to contact the city about the rental application and request for reasonable accommodations, Baptist Homes sent the city attorney an email on February 12, 2024, stating: "If the City has concluded that our intended lease of the premises to four developmentally disabled adults residing together as a single household unit is inconsistent with the property's R-1 zoning designation, as suggested in Kianca Guyton's letter dated June 1, 2023, please provide me with the basis for the City's conclusion, and consider this email as a second request for a reasonable accommodation of any such inconsistency." (Ex. 11 Feb. 12, 2024 Email to Chelsea Brannon). Defendant made no response to the letter, and as a result, Plaintiff commenced this instant action. To date, Defendant has not made or issued a formal decision on Baptist Home's request for reasonable accommodation or the rental application.

It is expected the City will argue that its failure to respond to the request for reasonable accommodation is somehow excused due to an alleged failure of Baptist Homes to exhaust administrative remedies. Specifically, the City has asserted that the June 1, 2023 letter of Kianca

Guyton, wherein she identified multiple potential classifications of the use of the property, was a final decision of the City of a zoning violation by Baptist Homes which could be administratively appealed. Even if the City's argument Baptist Homes failed to pursue administrative remedies had merit, which it does not, it is not relevant to the issues before this Court. An administrative appeal based on the June 1, 2023 assumptions of Guyton could have resolved only the City's classification of Baptist Homes use of Drayton Place as in violation of the zoning ordinances. Rather than fighting the City on its arbitrary decision the zoning ordinances would be violated (at the time of the June 1, 2023 letter Drayton Place sat empty), Baptist Homes instead requested the City provide a reasonable accommodation from its zoning ordinance. A reasonable accommodation assumes that the use will violate the zoning ordinance.

     **C.**    **The Accommodation Sought is Reasonabl**e.

Baptist Homes' request for Defendant Madison to provide an accommodation to four individuals living with disabilities—who each rely on some manner of individualized support services to live independently and engage meaningfully in community life—was reasonable under the FHA and the ADA. The accommodation Baptist Homes' seeks is for Madison to allow the Drayton Place residents the ability to reside as a family in a neighborhood zoned for single-family residential use in a manner consistent with the City's R-1 designation, just like any other Madison family. To deny these individuals the opportunity to live in a neighborhood reserved for single-family households is to discriminate against individuals with disabilities by excluding them from participating in such communities.

"An accommodation is 'reasonable' under the [FHA] unless it imposes an undue financial and administrative burden on the defendant or requires a fundamental alteration in the nature of the program at issue, which in this case is the City's zoning scheme." *United States v. City of*

*Jackson, Mississippi*, 318 F. Supp. 2d 395, 412 (S.D. Miss. 2002), *aff'd sub nom. United States v. City of Jackson, Miss.*, 359 F.3d 727 (5th Cir. 2004). Defendant has presented no evidence to support the contention that permitting the residents at 405 Drayton Place to lease their home would impose any undue financial or administrative burden on the City.

This court has previously addressed whether allowing individuals who require support services would fundamentally alter the characteristics of a neighborhood where the contested property was zoned for single-family residential use and held in the Plaintiff's favor. Whether Baptist Home's requested accommodation would have resulted in a "fundamental alteration" of the City of Madison's zoning scheme depends on whether the accommodation "would have changed the character of the City's single-family neighborhoods." Memorandum Opinion and Order, 34, *United States v. City of Jackson, Mississippi*, No. 3:96-cv-419WS, (S.D. Miss. Oct. 14, 1997).[2]   In *United States v. City of Jackson, Mississippi*, this court held that the City of Jackson violated § 804(f)(3)(B) because it failed to make reasonable accommodations in its zoning policies. Specifically, Plaintiff alleged that the City violated the Act by "refusing to authorize operation of a small, non-profit personal care home at 3908 North State Street, which is located in a single-family residential zoning district in Jackson, Mississippi." *Id.* at 1. The plaintiff sought to operate a care facility for ten individuals with Alzheimer's disease. The court identified several reasons why Plaintiff's requested accommodation to the City of Jackson's R-1 zoning scheme would not have changed the character of the residential neighborhood immediately surrounding the residence. *Id.* at 35. For similar reasons, allowing these four disabled individuals to reside at Drayton Place would not change the character of the Crescent Landing neighborhood.

---

[2] [Doc. 63, p. 34] No. 3:96-cv-419WS.

Baptist Homes' operations are consistent with the City's zoning ordinance because the Drayton Place residence's activities accord with single-family use. Drayton Place, like the residence in *U.S. v. City of Jackson*, "provide[s] its inhabitants a demonstrably residential, non-institutional living environment" and therefore is "fully compatible with the traditional objectives and values associated with single-family residential neighborhoods, even if [Baptist Homes] employ[s] staff." *Id.* For example, Baptist Homes only intends to lease the property to four individuals who would live together as a single family, consistent with Section 9.01 of Madison's zoning ordinance. In *U.S. v. City of Jackson*, the court reasoned that the plaintiff's operations were consistent with the zoning scheme of the neighborhood because while residents had lived at the home before the litigation, no neighbors had complained about their presence or the plaintiff's operations. *Id.* at 36. Likewise, Drayton Place has been occupied by four individuals with disabilities since late 2023, and the record is absent of evidence that neighbors have voiced complaints about their presence or the presence of Baptist Home's staff. In fact, the contrary is true. Residents of Crescent Landing expressly approved Baptist Home's presence in the neighborhood when their Home Owners' Association gave Baptist Homes approval to lease the property.

Additionally, the request cannot be considered unreasonable based on the City's opinion there may be commercial aspects of Baptist Homes' ownership of Drayton Place due to the fact it provides certain services to the Drayton Place residents. The City allows for some commercial operations within the single-family residential zone. Defendant's zoning ordinance already allows for individuals, by special exception, to operate childcare facilities, bed and breakfast inns, certain public or quasi-public facilities and utilities, and railroads and railroad spur tracks in

neighborhoods zoned for single-family residential use.[3] (Ex. 5 Excerpt of City of Madison Zoning Ordinance, at 8). Allowing the individuals with disabilities who intend to lease the Drayton Place residence to receive supervised living services so that they are able to reside in the City independently cannot be argued as unreasonable. Furthermore, because the reasonable accommodation Baptist Homes seeks would not change the property's zoning designation, it does not constitute a permanent and fundamental land use change. Lastly, Defendant's zoning ordinance already permits families consisting of unrelated persons to occupy single-family residences. (*See id*. at 5 ("family" defined)). The mere fact that the individuals at 405 Drayton Place require support services to live fulfilling lives does not fundamentally alter the characteristics of the Crescent Landing neighborhood.

**D.    The Accommodation is Necessary to Afford the Residents Equal Opportunity Under the Law.**

"To prove that an accommodation is necessary, courts require that a plaintiff prove that the requested accommodation makes the home either 'financially viable' or 'therapeutically meaningful.'" *Woman's Elevated Sober Living L.L.C. v. City of Plano, Tex.*, 86 F.4th 1108, 1112 (5th Cir. 2023) (citing *Bryant Woods Inn v. Howard County*, 124 F.3d 597, 605 (4th Cir. 1997)). The requested accommodation "must be essential." *Id.* (citing *Cinnamon Hills Youth Crisis Ctr. v.*

---

[3] Per Article IX, Section 9.01 of the City of Madison's zoning ordinance the purpose of the single family residential district (R-1) "is to promote the preservation and establishment of areas of law density residential development with a minimum lot size of 15,000 square feet. (Ex. 5 Excerpt of City of Madison Zoning Ordinance, at 8). Per Section 9.02 of Article IX, the land uses permitted in zone R-1 are "(a) Single-family detached dwellings with only one principal dwelling per lot. (b) Accessory uses and structures associated with the use of the land for residential purposes. (c) Horticultural use not involving the sale of produce on the premises. (d) The keeping of animals in compliance with the City of Madison's Animal Control Ordinance. (e) Home occupations in compliance with section 5.06 of this Ordinance. (f) Streets and highways." (*Id.*) Section 9.03 of Article IX permits only the following conditional uses: "(a) Public or quasi-public facilities and utilities in compliance with Section 5.03 and 5.04 and other regulations in this ordinance. (b) Child care facilities. (c) Inns or 'bed and breakfast inns'. (d) Railroads and railroad spur tracks." (*Id.*)

*Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012)). In *Woman's Elevated Sober Living*, the Fifth Circuit evaluated whether a request for reasonable accommodation was necessary in light of the definition of necessity, which is something that is "indispensable, requisite, essential, needful; that cannot be done without, or absolutely required." *Id.* (citing *Vorcheimer v. Philadelphian Home Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018)). The court noted a Fourth Circuit holding that the necessity element "requires the demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person." *Id.* (quoting *Bryant Woods Inn*, 124 F.3d at 605). However, the issue the court applied the test to concerned whether the trial court erred in basing its decision on testimony that relief from occupancy requirements would provide greater therapeutic effect because "adding more residents increases therapeutic benefit in recovery homes." *Id.*

The reasonable accommodation that Baptist Homes seeks is distinguishable because Defendant's refusal to issue a rental permit is not based on the number of individuals that reside at Drayton Place. Furthermore, the facts of the instant case illustrate that the necessity of the accommodation lies not in an increase in therapeutic effect, but in the residents' ability to choose to live in the community of their choice, and, at the same time, receive the kind of services available to individuals on an ID/DD waiver. The four individuals who intend to continue to reside at Drayton Place (and intend to pay rent to do so) have lived together as a family unit since 2012. (Ex. 12 McCormack Dep. 19:22 – 20:3). For years, the individuals have lived in a home within a residential district in a different City. Without an accommodation from Defendant's rental and zoning ordinances, the Drayton Place residents, or any similarly situated individuals who receive services through the ID/DD waiver program, would be forced to live in zones that allow for only higher-density land uses.

Additionally, allowing the four individuals with disabilities to reside together in one family home allows for Baptist Homes to provide the support services required for the individuals to reside in a community setting. Under the DMH guidelines, Baptist Homes must provide 24-hour supervision to individuals in supervised living. 2024 DMH OPERATIONAL STANDARDS R. 30.1(G). Communal living allows these services to be provided collectively to the group. DMH guidelines require that newly certified homes only house four or fewer individuals. *Id.* at (H). Likewise, this living situation allows the four individuals to pool their financial resources. Absent the reasonable accommodation, it would be nearly impossible for these individuals to reside in a residential neighborhood in the City and receive the necessary support sources for independent living. Thus, more than a direct link between the accommodation sought and the equal opportunity that it would provide exists because the accommodation itself, the right to reside within Madison's single-family residential district, is necessary and constitutes the very essence of equal opportunity.

**V. Madison's Denial of the Request for Reasonable Accommodation and Refusal to Process Baptist Homes Rental Application.**

Defendant's failure to respond to Baptist Home's multiple requests for reasonable accommodations was in itself a denial. "The failure to make a timely determination after meaningful review amounts to constructive denial of a requested accommodation, 'as an indeterminate delay has the same effect as an outright denial.'" *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) (quoting *Groome Resources Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000)). The Department of Justice and the Department of Housing and Urban Development, the federal entities responsible for enforcing the Fair Housing Act, in a Joint Statement providing an overview of the Fair Housing Act's requirements, stated that "[a] local government has an obligation to provide prompt responses to reasonable accommodation requests, *whether or not a formal reasonable accommodation*

*procedure exists*." Joint Statement of the Department of Housing and Urban Developments and of the Department of Justice (emphasis added).[4] And "[a] local government's undue delay in responding to a reasonable accommodation request may be deemed a failure to provide a reasonable accommodation." *Id.*

In *Groome Resources, LTD., L.L.C. v. Parish of Jefferson*, 52 F.Supp 2d 721 (E.D. La. June 18, 1999), the plaintiff was delayed in closing on the sale of a house that was purchased with the intent to provide supportive services to five Alzheimer's patients because the Parish of Jefferson refused to process their zoning application. *Id.* at 722. The parish's zoning ordinance provided a process for individuals to seek reasonable accommodations, requiring them to apply for approval to the Parish. *Id.* The Parish departments responsible for reviewing and approving reasonable accommodations applications had completed their review and were prepared to render a decision on the application, until a councilman intervened. *Id.* at 724. The court held that because the parish had no criteria established to grant or deny such applications, and because the parish had not granted or denied the plaintiff's application, "to deny plaintiff's claim as premature [because the parish had not denied the application] would effectively frustrate the clear mandates of the Fair Housing Act." *Id.*

The City has no procedure for approving requests for reasonable accommodations to its zoning ordinance. Prior to Baptist Home's request, Defendant's Director of Community Development had never heard of a request for reasonable accommodations under the FHA. (Guyton 52:25-53:12). But she admits that she forwarded Baptist Homes' request for a reasonable accommodation to legal counsel for the City. Nearly two years have passed since Baptist Home's December letter requesting a reasonable accommodation, and Defendant has not decided whether

---

[4] https://www.justice.gov/opa/file/912366/dl

to grant or deny such request. Like *Groome*, Defendant's prolonged inaction on Baptist Homes' request constitutes a constructive denial of that request, as the City's indefinite delay has the practical effect of an outright refusal. To hold otherwise would undermine the FHA's purpose by allowing municipalities to evade their obligations simply by refusing to respond.

Additionally, the City refused to process Baptist Homes' RIPLA application. The City originally stated that it took no action on the request due to an alleged failure to seek an administrative remedy regarding the City's various positions that allowing four disabled individuals to reside at Drayton Place might violate the City's zoning ordinances. Ex. 14 Defendant's Answers to Plaintiff's First Set of Interrogatories, No. 5. However, Defendant later testified that it took no action because Baptist Homes violated the zoning ordinance. But the City admittedly never communicated this fact to Baptist Homes and never provided any formal response to Baptist Homes' RIPLA application, although the usual process is for the City to advise an applicant in writing of any denial of an application. (Guyton 74:8-75:5). The City's refusal to process the RIPLA application based on an allegation that the property's use violates the zoning ordinance without informing the applicant is a denial of the application. The denial of the RIPLA application based on an alleged zoning violation, while simultaneously refusing to consider Baptist Homes' request for reasonable accommodation from the applicable zoning ordinance, could only be in bad faith.

## VII. Remedies.

The Court should issue an order compelling Madison to provide Baptist Homes a reasonable accommodation that would allow the residents of 405 Drayton Place to lease the premises from Baptist Homes and reside there subject only to those additional regulations that are prescribed by the Mississippi Department of Mental Health to be certified to provide supervised

living services to individuals with intellectual and developmental disabilities through the ID/DD waiver program. Under the FHA and ADA, a court may award injunctive relief for a party's breach of duty to provide reasonable accommodations. 42. U.S.C. § 3613(c)(1); 42 U.S.C. § 12133 (incorporating by reference the remedies available under the Rehabilitation Act). To prevail on a request for permanent injunctive relief, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Baptist Homes has and continues to suffer irreparable harm due to Madison's failure to grant a reasonable accommodation because without a certificate of compliance Baptist Homes is unable to lease 405 Drayton Place to a family of individuals with intellectual and developmental disabilities. Monetary and other legal remedies are inadequate because without an order compelling the City to permit Baptist Homes to use the premises in a manner that allows it to provide necessary support services to the residents, the city is still in breach of its obligation to not discriminate against individuals with handicaps. Given that Baptist Homes continues to suffer such injury, the potential hardship Madison would face is minimal because all that would be required of the City is to act in a manner that it routinely does for the approval of other rental properties located in R-1. Lastly, the public interest is not disserved by allowing individuals with disabilities to lease and reside in a home that is located in Madison's R-1 district. For these reasons and those described above, Baptist Homes is entitled to injunctive relief.

Additionally, both the FHA and ADA allow the court discretion to award the prevailing party attorney fees. 42. U.S.C. § 3613(c)(2); 42 U.S.C. § 12205. To be a prevailing party "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal

relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 576 (5th Cir. 2018) (quoting *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir.2015)). A final judgment on the merits in a plaintiff's favor satisfies the first element. *Id.* An injunction granting Baptist Homes the ability to lease Drayton Place would materially alter Baptist Homes' relationship with Madison in a way that befits Baptist Homes because Madison would ". . . implement[] what [Baptist Homes] asked for in the litigation—a reasonable accommodation . . . ." *Id.* Therefore, if this court enters an injunction favoring Baptist Homes, it would have the discretion to also award attorney fees. Baptist Homes is entitled to as much because of the great expense it incurred in pursuit of protecting its rights.

## VII. Conclusion.

Because Madison failed to grant Baptist Homes a reasonable accommodation that would allow Plaintiff to lease 405 Drayton Place to a family of four individuals with intellectual and developmental disabilities, the court should enter judgment for Plaintiff on the entirety of its claims.

Respectfully submitted, this the 17th day of November, 2025.

BAPTIST HOMES, INC. D/B/A SON VALLEY

By: <u>John P. Cottingham, IV</u>
William H. Hussey (MSB# 102322)
Kelly H. Stringer (MSB# 103293)
John P. Cottingham, IV (MSB# 106957)
MAXEY WANN PLLC
401 E. Capitol St., Ste. 200(39201)
Post Office Box 3977
Jackson, Mississippi 39207-3977
Telephone: (601) 355-8855
Facsimile: (601) 355-8881
Email: william@maxeywann.com
Email: kelly@maxeywann.com

Email: jack@maxeywann.com

***Attorneys for Baptist Homes, Inc. D/B/A
SON Valley***

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on the date set forth hereinafter, a true and correct copy of the above and foregoing document was caused to be filed with the Clerk of Court causing the Court's ECF system which sent notification of such filing to all counsel of record.

This the 17th day of November, 2025.

/s/John P. Cottingham, IV
John P. Cottingham, IV

22