**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BAPTIST HOMES, INC.
DBA SON VALLEY**                                                                                                    **PLAINTIFF**

**v.**                                             **CAUSE NO.: 3:24CV-00092-KHJ-MTP**

**CITY OF MADISON, MISSISSIPPI
A MUNICIPAL CORPORATION, AND
JANE–JOHN DOES I–X**                                                 **DEFENDANTS**

---

**PLAINTIFF BAPTIST HOMES, INC.'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

COMES NOW, Baptist Homes, Inc. d/b/a Son Valley ("Baptist Homes"), by and through undersigned counsel, and files this its Reply Memorandum in Support of its pending [Doc. 79] Motion for Summary Judgment. In support thereof, Baptist Homes incorporates by reference all other pleadings, papers, and evidence contained in the record of this action.

### INTRODUCTION

Baptist Homes' Motion for Summary Judgment should be granted because the undisputed evidence shows that Defendant, City of Madison, Mississippi ("Madison" or "City") refused to make reasonable accommodation to the application of its zoning ordinance when such are necessary to afford the residents of 405 Drayton Place ("Drayton") equal opportunity to use and enjoy a dwelling located within the City's single-family residential zoning district. In aid and encouragement of four individuals with intellectual and developmental disabilities in the exercise of their rights, Baptist Homes twice requested a reasonable accommodation from the City, and those requests were ignored. Baptist Homes' claims are ripe because Baptist Homes availed itself of all available administrative processes with the City. The accommodation sought is reasonable because Baptist Homes' use of Drayton does not substantially alter the characteristics of the subject

neighborhood or impose undue financial or administrative burden on the City. The accommodation is necessary because the City's zoning ordinance denies disabled individuals who receive Medicaid-funded support services an equal opportunity to obtain housing.

**ARGUMENT**

**A.   Baptist Homes' Claims are Ripe Because Madison Denied Baptist Homes' Requests for Accommodation.**

Madison incorrectly asserts that because Baptist Homes did not utilize certain procedural devices enumerated in the City's zoning ordinance, Baptist Homes' claims are not ripe. Initially, the City's argument rested solely on the fact that Baptist Homes did not appeal what Madison asserts was an appealable zoning verification letter. Now, the City alleges that Baptist Homes could have also applied for a conditional use permit.[1] Madison's arguments regarding ripeness are in essence claims that, to the extent the City had an obligation to provide Baptist Homes with accommodation, the City had not yet finally refused to do so. The City's arguments rely on persuasive authority that is both factually distinct and grounded in a legal standard that is not binding upon this Court. *See Evergreen Presbyterian Ministries Inc. v. Town of Haughton*, 2016 WL 4133587, at *6 (W.D. La. Aug. 3, 2016) (noting that the "final decision" requirement of *Williamson* conflicts with Fifth Circuit's decision in *Groome Resources Ltd., LLC v. Parish of Jefferson*, 234 F.3d 192, 198-200 (5th Cir. 2000)).

As discussed *infra*, Baptist Homes made two requests for reasonable accommodation to the City. *See infra* Part B.1. The first request was made on December 14, 2023, and the second on February 12, 2024. [Doc. 79-3]; [Doc. 79-11]. Baptist Homes commenced suit on February 13, 2024. [Doc. 1]. The record contains no evidence of any response by Madison to either of Baptist

---

[1] If an established procedure for requesting reasonable accommodation existed, then the City would not need to subsequently advance an alternative method as a basis for its argument.

2

Homes' requests. Just as the court in *Groome* found that the plaintiff's claims were ripe when a ninety-five-day period had passed between the request for accommodation and the commencement of suit, Baptist Homes' claims are ripe. *Groome Resources Ltd., LLC*, 234 F.3d at 198-200.

Furthermore, where courts have applied the finality requirement test and held that a plaintiff's claims were not ripe, the respective government entities had either codified a process for requesting accommodation in their zoning scheme or, before the start of litigation, articulated to the plaintiff a method to seek accommodation, which the plaintiff failed to follow. *See e.g.*, *Chosen Consulting, LLC v. Town Council of Highland*, 148 F.4th 451 (7th Cir. 2025); *Common Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118 (2nd Cir. 2014); *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565 (2nd Cir. 2003); *Thompson v. Borough of Munhall*, 44 F. App'x 582 (3rd Cir. 2002); *United States v. Village of Palatine*, 37 F.3d 1230 (7th Cir. 1994). In contrast, the procedures that Madison asserts Baptist Homes should have followed were never communicated to Baptist Homes prior to the commencement of these proceedings. Moreover, the procedures the City contends Baptist Homes should have pursued would have been futile. Pursuant to the City's own ordinances, neither would have vested in the City the authority to approve Baptist Homes' intended use. *Village of Palatine*, 37 F.3d at 1234 (noting that a plaintiff need not follow procedures where ". . . it is clear that the result of such procedures is foredoomed[.]").

Madison's reliance on *Chosen Consulting* provides no support for its arguments. In *Chosen Consulting, LLC*, the court found that the plaintiff's reasonable accommodation claim was not ripe because the City had directed the plaintiff to apply for a variance, which the plaintiff did not do. *Chosen Consulting, LLC*, 148 F.4th at 459 ("Chosen must undertake the *directed steps* to attempt to obtain the Town's approval of its proposed use. Until it does so, it is mere speculation whether Chosen even has an injury to complain of.") (internal quotation marks omitted) (emphasis added).

Madison has brought forth no evidence that it directed Baptist Homes to either appeal Kianca Guyton's June 1, 2023, letter or apply for a conditional use permit prior to litigation. Therefore, Madison's failure to respond to Baptist Homes' requests for accommodation evidences the City's commitment to a final decision to ignore Baptist Homes' requests.

Additionally, any attempt to seek a reasonable accommodation by appealing the City's June 1, 2023, letter or by applying for a conditional use permit would have been futile. The City asserts that its June 1, 2023, letter constituted an appealable zoning verification letter, notwithstanding that Baptist Homes never requested such verification from the City. Section 28.14 of the City's zoning ordinance governs appeals from Administrative Interpretations of the Zoning Administrator. Section 28.14.1 states:

> All appeals shall be in writing and shall include a copy of the original application for a building permit, change of use permit, dimensional variance, special exception or rezoning, together with a statement of the reason for the appeal.

[Doc. 77-1, p. 50, § 28.14.1]. The process for appealing administrative interpretations does not include a provision that permits appeals of zoning verification letters. [*Id.*] Therefore, an appeal of the June 1, 2023, letter was doomed to failure.

Section 28.06 governs the application process for special exceptions or conditional uses. The ordinance states: "The Mayor and Board of Aldermen is empowered to hear and decide whether or not proposed special exceptions (conditional uses) *authorized under this Ordinance* should be granted." [Doc. 77-1, p. 37, § 28.06] (emphasis added). Article IX, Section 9.03 defines which conditional uses, as provided by Section 28.06, are allowable in zone R-1. [Doc. 77-1, p. 29, § 9.03]. The following conditional uses are permitted in zone R-1, provided that the Mayor and Board of Aldermen approve: Public or quasi-public facilities and utilities, child care facilities, Inns or bed and breakfast inns, and railroad and railroad spur tracks. [*Id.*] Because Baptist Homes intends to lease a single-family dwelling to adults with disabilities, it necessarily does not intend

to use Drayton in a manner that would be allowable via a conditional use permit. Therefore, applying for a conditional use would have been futile.

**B.      Baptist Homes has met its Burden of Proof on its Claims for Reasonable Accommodation.**

The Fair Housing Act ("FHA") makes it unlawful for a municipality to refuse to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford individuals with disabilities equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(1), (f)(3)(B). To be entitled to judgment as a matter of law on a failure to accommodate claim, a plaintiff must establish four factors. "(1) the residents of the affected dwelling or home suffer from a disability, (2) they requested an accommodation from the defendant, (3) the requested accommodation was reasonable, and (4) the requested accommodation was necessary to afford the residents equal opportunity to use and enjoy the home." *Woman's Elevated Sober Living L.L.C. v. City of Plano*, 86 F.4th 1108, 1112 (5th Cir. 2023). "Reasonable accommodation claims under the FHA and ADA both require that a reasonable accommodation be provided to the plaintiffs if necessary to allow the plaintiffs to have usage and enjoyment in a facility equivalent to individuals who are not disabled." *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 459 (5th Cir. 2018). As an initial matter, Baptist Homes notes that Madison conceded that the Drayton Place residents suffer from disabilities. [Doc. 78, p. 17]. Further, Baptist Homes notes that because this claim is ripe, the City denied Baptist Homes' accommodation requests.

**1.      Baptist Homes requested an Accommodation from Defendant.**

The record contains sufficient evidence that Baptist Homes requested a reasonable accommodation from the City. On December 14, 2023, Baptist Homes sent a letter to the Madison

City official responsible for administering the City's zoning ordinance. In the letter, Baptist Homes explicitly requested a reasonable accommodation from the City's determination that Baptist Homes' use of Drayton violated the City's zoning ordinance. The letter stated:

> Insofar as the City has concluded that the lease of this premises to four developmentally disabled adults residing together as a single household unit is inconsistent with the property's R-1 zoning designation, please provide me with the basis for this conclusion, and *consider this letter our formal request for a reasonable accommodation of that inconsistency*.

[Doc. 79-3, p. 2] (emphasis added). The City admits this letter was received by its legal counsel. [Doc. 79-4, 46: 8-15, 49: 10-18] [hereinafter "Guyton"]. Later, Baptist Homes emailed Madison's City attorney, and that e-mail stated: ". . . consider this email as a second request for reasonable accommodation of any such inconsistency." [Doc 79-11]. Madison does not dispute that it received either communication or that each contained language requesting accommodation. Rather, the City argues that because Baptist Homes failed to comply with certain formalities, its requests were invalid. As discussed, the City's position is inherently flawed.

First, the City argues that Baptist Homes' second accommodation request was invalid because it was sent at 4:53 p.m. on the day before Baptist Homes commenced litigation. Madison also argues that, because Kianca Guyton did not even know what a reasonable accommodation request was, both requests were invalid because they did not invoke the titles of the FHA and ADA. However, the City relies on no authority for either assertion. While the second request for accommodation was sent on the day before Baptist Homes commenced suit, Madison admits it received Baptist Homes' first request, sent nearly two months earlier, and the first request was forwarded to legal counsel. [Guyton 46: 8-15, 49: 10-18]. While it may be morally excusable that Madison's Director of Community Development did not even know what an accommodation request was at the time, it is well settled that ignorance of the law is not generally a legal defense

6

to its requirements. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010) ("We have long recognized the 'common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally.'") (quoting *Barlow v. United States*, 7 Pet. 404, 411 (1833)). The applicable caselaw and statutes do not require a party to make a government entity aware of its duties under the FHA or ADA. Furthermore, given that both accommodation requests had been sent to the City's legal counsel, Madison should have been aware of its obligations.

The City also claims that Baptist Homes was required to submit its accommodation request to the Board of Aldermen, rather than to the City official responsible for administering the zoning ordinance. [Doc. 87, p. 18]. The assertion is essentially a regurgitation of the City's ripeness arguments. Madison's zoning ordinance contains no provision that mentions requests for reasonable accommodation under the FHA or ADA, and much less a provision that requires such requests to be made to the Board. *See generally* [Doc. 77-1]. Further, as discussed *supra*, and in [Doc. 89] Baptist Homes' Memorandum in Support of its Response in Opposition to Madison's Motion for Summary Judgment, the City's ordinances provide no mechanisms for persons to make requests for reasonable accommodation. Because Baptist Homes wrote the City twice, explicitly requesting a reasonable accommodation, Baptist Homes has met its burden on this factor.

2. **The Accommodation Baptist Homes Seeks is Reasonable.**

"[A]n accommodation is 'reasonable' for purposes of the [FHA] unless it imposes an undue financial and administrative burden on the defendant or requires a fundamental alteration in the nature of the program at issue, which in this case is the City's zoning scheme." Memorandum Opinion and Order, *United States v. City of* Jackson, No. 3:96-cv-419WS, [Doc. No. 63] at *33-34

7

(S.D. Miss. Oct. 14, 1997).[2] Whether the grant of a reasonable accommodation would constitute a "fundamental alteration" to Madison's zoning scheme depends on ". . . whether it would have changed the character of the City's single-family neighborhoods." *Id.* In *United States v. City of Jackson*, the court articulated several reasons why the plaintiff's use of a home located within Jackson's single-family residential district would not fundamentally alter the characteristics of that neighborhood. For the same reasons, Baptist Homes' use of Drayton would not alter the characteristics of the Crescent Landing subdivision.

The record contains sufficient evidence that Baptist Homes intends to use Drayton in a manner that is consistent with single-family residential use and the City's zoning scheme. Baptist Homes purchased Drayton and intends to lease it to a single-household unit. [Doc. 79-3]. The Drayton Place residents reside together in a physical structure that is configured and furnished as a traditional family home. [Doc. 79-6, 23:10-24:4] [hereinafter "Minor"]. Only four residents occupy the four-bedroom house, with support from a single Baptist Homes employee. [Doc. 79-12, 44: 3-15, 49: 8-12] [hereinafter "McCormack"]. None of the residents own a vehicle and therefore do not contribute to street congestion. [Minor, 24: 2-4]. The residents recreate, dine together, and support one another as a traditional family would. [Doc. 79-1, 104: 1-14] [hereinafter "Morton"]; [McCormack, 43:15-44:2]. The residents have lived together as a family since 2012. [McCormack, 23: 7-17]. Residents within Baptist Homes' supervised living programs do not frequently turnover. [Morton, 17: 4-23]. Baptist Homes makes housing in residential settings available to its disabled residents because they do not require institutional care. [McCormack,

---

[2] Madison contends that *United States v. City of Jackson*, 318 F. Supp. 2d 395 (S.D. Miss. 2002) is "readily distinguishable" because it involved the City of Jackson's violation of a court decree. However, Baptist Homes does not refer to the court's 2002 decision; instead, Baptist Homes cites the court's October 14, 1997, order, in which the court found that the City of Jackson failed to provide a reasonable accommodation to the Plaintiff. The order is available through the Clerk's office.

24:10-25:2]. The residents are each intended to sign a lease agreement, which affirms their agreement to live together as a single household unit. [*Id.* 41: 18-22, 45: 15-22]. They reside within the Crescent Landing neighborhood with the express approval of the neighborhood's homeowners' association, and the City has not sought to evict them. [Doc. 79-10, p. 18]; [Doc 87, p. 19].

The record reflects that any commercial aspect of Baptist Homes' use of Drayton is clearly incidental to the home's residential use, and courts have found similar uses reasonable. *See e.g.*, Memorandum Opinion and Order, *United States v. City of* Jackson, No. 3:96-cv-419WS, [Doc. 63] at *34 (S.D. Miss. Oct. 14, 1997) (finding that the City of Jackson violated the FHA by refusing to authorize the operation of plaintiff's non-profit personal care home within the city's single-family residential district); *Groome Resources, Ltd. LLC v. Parish of Jefferson*, F. Supp. 2d 721 (E.D. La. 1999) (holding that an accommodation to allow the plaintiff to operate a group home for five Alzheimer's patients in a residential district was reasonable); *Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 692-93 (M.D. La. 2013) (finding that because "[t]he goal of the Oxford House is to create a supportive, family environment and to treat the residents . . . as a functional family[,]" the proposed use of the dwelling was "similar to the uses already permitted by the zoning code[,]" and the requested accommodation was reasonable) (citation omitted).

The accommodation would not impose undue financial burden or expense on the City. Madison asserts that Baptist Homes should have applied for a conditional use permit to receive the reasonable accommodation it seeks. While applying for a conditional use permit would have been futile for Baptist Homes because the City's zoning ordinance does not permit group homes to operate in zone R-1 by special exception, by asserting that Baptist Homes should have followed such procedure, the City has implicitly admitted that it administers a program that would necessarily be similar to one used to process reasonable accommodation requests. Because the

9

City already has similar processes that do not unduly burden it, the accommodation Baptist Homes seeks would not impose undue financial burden or expense on the City.

Additionally, because Madison does not allege that the requested accommodation would impose undue financial burden or administrative hardship, there is no evidence in the record that would support such findings. *Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d at 692 ("Because neither party argues that the accommodation would impose an undue financial burden or an administrative hardship on the City, and the Court does not find anything in the record that would support such a finding, the Court will not address this prong.").

### 3. The Accommodation is Necessary to Afford Equal Opportunity in Housing.

Madison asserts that Baptist Homes' requests for accommodation are unnecessary because Baptist Homes seeks "more or better" opportunities for the Drayton Place residents than those available to individuals who are not disabled. In support, Madison offers deposition testimony that the City has declined to allow other non-disabled, unrelated persons who pool their resources to live in an R-1 neighborhood. However, Madison fundamentally misses the point. The difference between non-disabled persons who wish to collectively lease a home and the Drayton Place residents is that the Drayton Place residents are disabled. Baptist Homes is a 501(c)(3) non-profit organization dedicated to providing support services to individuals with disabilities. [Morton, 20: 8-12]. Drayton is certified by the Mississippi Department of Mental Health ("DMH") to provide necessary support services to its residents because the residents are not sufficiently high-functioning to live without support. [McCormack, 14: 9-22]. Without support from Baptist Homes, the residents could not travel to doctors' appointments or other locations, ensure their own safety, or fix their own meals. *See* [*Id.* 43:15-44:2]. Furthermore, the residents require some manner of assistance with eating, grooming, bathing, dressing, and other personal care needs, including the

management of their medication. [*Id.* 49:13-50:1, 60: 2-19]. Baptist Homes also assists residents in managing their finances. [*Id.* 58: 12-24]. Because of their disabilities, none of the residents has a job, and Medicaid or other programs pay for all of the costs of their living. [*Id.* 50: 2-17].

The Mississippi Division of Medicaid proscribes the level of services that the Drayton Place residents receive. [*Id.* 13:1-14:22]. Through Medicaid's ID/DD waiver program, the Drayton Place residents receive coverage for congregate living services. [Morton, 113:24-115:23]; *see* 23 MISS. ADMIN. CODE Pt. 208 R. 5.7. To be eligible to provide such services, the program requires that the cost to the State of Mississippi does not exceed the cost of institutional care. [*Id.*]; 23 MISS. ADMIN. CODE Pt. 208, R. 5.1, A. Baptist Homes meets these requirements by offering an arrangement under which individuals pay their cost of living, and Medicaid covers their support services. But for the existence of support services providers like Baptist Homes, disabled individuals who qualify for Medicaid coverage and require support services would not be able to live a life comparable to non-disabled individuals. The Drayton Place residents do not seek preferential treatment or enhanced housing opportunities; they seek to live in an environment that most closely resembles what is available to non-disabled persons. Therefore, the requested accommodation is necessary to enable Baptist Homes to provide the Drayton Place residents with equal housing opportunities.

Madison also asserts that Baptist Homes has not presented evidence that the denial of its request would confine the residents to higher-density zones. However, the City's zoning ordinance is included in the record. By its clear terms, the ordinance discriminates against individuals with disabilities because it does not permit Baptist Homes or other DMH-certified support services providers to operate within zone R-1. Madison implicitly promotes this proposition by arguing that the accommodation is unnecessary because the residents could simply return to Jackson. Logic

defies the City's argument that, on one hand, Madison's zoning scheme is not discriminatory, and on the other, that the Drayon Place residents should just go live somewhere else.

Respectfully submitted, this the 12th day of December, 2025.

BAPTIST HOMES, INC.,
D/B/A SON VALLEY

By: /s/ John P. Cottingham, IV
John P. Cottingham, IV (MSB #106957)
One of Its Attorneys

**Of Counsel:**

William H. Hussey (MSB #102322)
Kelly H. Stringer (MSB #103293)
John P. Cottingham, IV (MSB #106957)
MAXEY WANN PLLC
401 E. Capitol Street, Suite 200 (39201)
Post Office Box 3977
Jackson, Mississippi 39207-3977
Telephone: (601) 355-8855
Facsimile: (601) 355-8881
Email: william@maxeywann.com
Email: kelly@maxeywann.com
Email: jack@maxeywann.com

*Attorneys for Baptist Homes, Inc., D/B/A SON Valley*

## **CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that on the date set forth hereinafter, a true and correct copy of the above and foregoing document was caused to be filed with the Clerk of the Court using the Court's ECF system, which sent notification of such filing to all counsel of record.

This the 12th day of December, 2025.

/s/ John P. Cottingham, IV
John P. Cottingham, IV