**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BAPTIST HOMES, INC.
DBA SON VALLEY**                                                                                         **PLAINTIFF**

**VS.**                                                                                        **3:24-CV-00092-KHJ-MTP**

**CITY OF MADISON, MISSISSIPPI
A MUNICIPAL CORPORATION, AND
JANE-JOHN DOES I-X**                                                                                   **DEFENDANTS**

**CITY OF MADISON, MISSISSIPPI'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The City of Madison, Mississippi ("Madison" or "City") hereby submits its Reply in Support of its Motion for Summary Judgment. (Doc. 77).

**I.      Plaintiff's claims are not ripe and should be dismissed.**

**A. Madison is not arguing the finality requirement under *Williamson;* rather, it is arguing that there must be a final decision by Madison's Mayor and Board of Aldermen which alone can make a final decision on Plaintiff's zoning request.**

Plaintiff mischaracterizes Madison's argument regarding ripeness. Madson never suggested "that the Court should adopt the finality requirement established in *Williamson*," though Madison believes it would be appropriate. In *Groome Resources Limited, LLC*, v. *Parish of Jefferson*, 234 F.3d 192 (5th Circuit 2000), the panel never cited *Williamson*, so it never applied or rejected *Williamson's* finality requirement.  But the Fifth Circuit,  as have  most Circuits, held that there must be a "final decision" by the governing authority while at the same time it recognized there can be an "actual or constructive" denial of a request for a  reasonable accommodation. *Id.* at 199. It is axiomatic that in order for there to be constructive denial, the party seeking reasonable accommodation must give the governing body the opportunity to grant, deny or delay a ruling.

There are two differences between Groome Resources' conduct and Plaintiff's conduct. First, Groome Resources followed the Parish's process by *first* submitting a formal application to

the Parish board empowered to grant or deny it. *Id.* at 196 ("Zoning Ordinance clearly gives that authority to the Department of Inspection and Code Enforcement" and does not require approval by the Council or any individual council person"). Due to local opposition, the Parish refused to act upon the duly submitted application for reasonable accommodation. Plaintiff has not followed Madison's zoning scheme. Second, the Court indicated there was an immediate injury because of the "financial penalties resulting from the delay in closing." *Id*. at 200. *See also Chosen Consulting, LLC v. Town Council of Highland*, 148 F.4th 451, 459 (7th Cir. 2025) (when regulations at issue apply to particular land in question the government must commit to a final, conclusive position before claim ripens under FHAA and ADA); *Thompson v. Borough of Munhall*, 44 Fed. App'x 582, 583 (3rd Cir. 2002) (denial of a rezoning request was not a final decision because of unpursued option of seeking a variance remains).

### B. Madison's Zoning Ordinance sets forth a clear path to obtain a decision necessary for ripening a claim under the FHAA and ADA.

Plaintiff's President, Attorney and 30(b)(6) designee, Ronald Morton, testified that he read the Zoning Ordinance before Plaintiff purchased the Drayton home. (Doc. 77-1, pp. 72 & 92). The Zoning Ordinance he read states three times that the Zoning Administrator and Director of Community Development are one and the same. It states:

- Planning and Development Director: See Zoning Administrator.

*\*\*\**

- Zoning Administrator (or Planning and Development Director): The official (or officials) charged by the Mayor and Board of Alderman with the administration and enforcement of this Zoning Ordinance, or its duly authorized representative.

*\*\*\**

.1 Duties of the Zoning Administrator (also referred to as Planning and Development Director):

(Doc. 77-1, pp. 23, 28, and 31).

He read that the Zoning Administrator (or Planning and Development Director) is vested with the power to determine "the general intent or specific meaning of any provision of the Zoning Ordinance text…" (Doc. 77-1, p. 32). The Zoning Ordinance informed him there was an opportunity to appeal the administrative interpretation. "Appeals from said administrative interpretation shall be made as provided in Subsection 28.14.01 of this Ordinance." (Doc. 77-1, pp. 32, 33). There was no mystery as to whom he might appeal that administrative determination or conclusion:

> [A]ny party aggrieved with the administrative interpretation of the Zoning Administrator shall have the right to appeal such interpretation. **Such appeals may be made directly to the Mayor and Board of Aldermen, or the appeal may be made to the Planning Commission.** If the appeal is made to the Mayor and Board of Aldermen… .

(Doc. 77-1, p. 50) (emphasis added).

If the party elects to appear before the Planning Commission, an adverse decision may be appealed the Board of Aldermen. The Planning Commission is an advisory board only.[1] Plaintiff is just flat wrong when it claims that the June 1 letter "was not the type of interpretation covered by the appeals procedure." (Doc. 89, pp. 9-10). Plaintiff had the option of appealing the administrative decision directly to the Board of Aldermen. But it also had another avenue – a conditional use - to obtain a decision by the Board.

Plaintiff rightfully recognizes that the Zoning Administrator does not possess the authority to grant conditional uses. The authority to grant or deny a conditional use rests solely with the Board of Aldermen. Plaintiff's President/Attorney was also informed that "The Mayor and Board of Aldermen is empowered to hear and decide whether or not proposed special exceptions

---

[1] Two benefits of appearing before the Planning Commission are (1) their recommendation will carry some weight with the Board of Aldermen and (2) they can provide constructive advice to improve a project before going before the Board of Aldermen.

(conditional uses) authorized under this Ordinance should be granted." (Doc. 77-1, p. 37). On that same page, he was informed of the kinds of information important for the Mayor and Board to consider, and other requirements associated with obtaining a conditional use. Accordingly, Plaintiff could have obtained a final decision by either appealing to the Board the Zoning Administrator's conclusion or submitting an application for a conditional use. Either one would have obtained a "final decision" necessary to ripen Plaintiff's claims. Plaintiff did neither.

In summary judgment briefing, Plaintiff has contended that Madison must have a specific procedure in its ordinance pertaining to a request for a reasonable accommodation under the FHA and ADA. While the Parish in *Groome* did have such a procedure, there is no authority stating that a city must adopt an ordinance specifically for FHA and ADA reasonable accommodation. The overwhelming majority of the cases cited herein pertain to a final decision using the city's existing procedures for obtaining a variance or conditional use. *See Bryant Woods Inn,* 124 F. 3d at 604 ("In enacting the FHA, Congress clearly did not contemplate abandoning the deference that Courts have traditionally shown to such local zoning codes.").[2]

### C. Madison had no duty to provide Plaintiff with instructions in addition to the Zoning Ordinance when not requested by Plaintiff.

Madison makes its Zoning Ordinance available on its website. Indeed, Plaintiff's President and attorney read Madison's Zoning and Rental Ordinances prior to identifying and purchasing the Drayton house. (Doc. 77-4, pp. 8, 9, 72 and 92). Morton acknowledged that he knew that if the June 1 letter was administrative interpretation from the Zoning Administrator, then he would need to appeal it to the Board of Aldermen. (Doc. 77-4, p. 41). Morton is familiar with municipal law

---

[2] Even the *Joint statement of the Department of Housing and Urban Development and the Department of Justice*, November 10, 2016, which Plaintiff relies upon, does not require a specific reasonable accommodation procedure. ("The act does not require a local government to adopt formal procedures for processing requests for reasonable accommodations to local land users zoning codes."); *see also United States v. Village of Palantine*, 37 F. 3d 1230, 1234 (7th Cir. 1994) (before a municipality has an obligation to make a reasonable accommodation, it must be given an opportunity to do so through its *own* lawful procedures).

4

including the municipal process for obtaining a variance or conditional use inasmuch as he had gone through that process with the City of Clinton. (Doc. 77-4, pp. 41, 44-46). Plaintiff cites no authority for the proposition that Madison was required to spoon feed Plaintiff the municipal process set forth plainly in its Zoning Ordinance. Just because there are instances where the applicant was directed by the city or parish, such does not make it Madison's burden to provide instruction independent of the Zoning Ordinance.

The cases Plaintiff relies upon for this created additional duty are inapposite because in each of them, the group home initiated the request for guidance. In *Chosen Consulting,* a meeting occurred with employees of the town. Such a meeting occurred only because the applicant had first contacted the appropriate persons with the Town of Highland, Indiana. It was in the initial meeting that the applicant was informed of the need to seek a variance. In *Sunrise Detox*, Sunrise submitted an application for a special permit before there was any direction given by the city. *Sunrise Detox V,* 769 F. 3d at 120. In other words, they asked the City to give guidance as to the best means of following the City's procedures to obtain the accommodation.

**D.  Plaintiff cannot claim ignorance of the identity of the Zoning Administrator.**

Plaintiff claims that even if it had known Ms. Guyton was the Zoning Administrator, her June 1 letter "did not constitute an administrative opinion." (Doc. 89, p. 8). This is belied by the plain terms of the Zoning Ordinance (see II. B., *supra*), Plaintiff's own testimony, and the plain language contained in Ms. Guyton's June 1 letter.

Plaintiff's President and long-time attorney testified that Ms. Guyton had reached a "conclusion" ("It was a June 1, letter, if I remember correctly, reaching a conclusion.") (Doc. 77-4, p. 23); ("it's a conclusion.") (Doc. 77-4, p. 31). A conclusion is defined in Websters Dictionary as "a reasoned judgment." There is no difference between a conclusion and a decision or a determination.

Guyton determined that based upon the information she possessed at the time, Plaintiff's use constituted one of three potential commercial uses. For the purposes of the notification, it was not necessary for her to determine which of those three. She was certain though that "multi-family or commercial uses are not an allowable use in this zoning district." No reasonable person can conclude that merely because she invited Plaintiff to call with questions or concerns that she had not made a determination as the Zoning Administrator.

The invitation to discuss the matter further, if Plaintiff so desired, in no way confuses the conclusion expressed in her letter. Plaintiff's proposed use was not permitted. Plaintiff went six months without communicating with the City. The City could reasonably conclude, as often happens when an interpretation is given, that the Plaintiff had decided not to locate at the proposed site.

### E. Plaintiff's claim that following the Zoning Ordinance would have been futile is without merit.

Plaintiff claims that any effort to obtain a conditional use, variance or amending the Zoning Ordinance would have been futile. Madison has never suggested Plaintiff should have sought a variance or a change in the zoning classification of its single-family home. However, Plaintiff cannot maintain in good faith that seeking a conditional use would be futile. As will be discussed below, a reasonable accommodation may occur in the form of a conditional use.

In June, 2025, Madison agreed to resolve this case by granting a conditional use to Plaintiff. (Doc. 86-16; Doc. 69). The Zoning Ordinance defines a conditional use as:

> A land use which would not generally be appropriate in a particular zoning district, but which, with certain restrictions or conditions, would in the judgment of the Mayor and Board of Aldermen, promote the public health, safety, morals, or general welfare of the City and would not adversely affect adjacent properties.

(Doc. 77-1, p. 14). The requirements for a conditional use are set forth in Section 28.06. (Doc. 77-1, p. 37-38). The process allows the Board of Aldermen to place certain conditions on the owner

to protect the health, safety and welfare of residents of the property and ensure that the use does not adversely affect adjacent properties.

One of the conditional uses allowed in an R-1 zoning district is for public or quasi-public facilities. (Doc. 77-1, p. 29). A public/quasi-public facility is defined as a use "which is customarily and ordinarily provided by either public or private agencies, groups, societies, corporations, or organizations, whose purpose is the provision of necessary and desirable goods and/or services for the general public health, safety, and welfare. (Doc. 77-1, p. 16). The list of uses is not exclusive. Section 5.03 of the Zoning Ordinance further states that public and quasi-public facilities may be located in any district in the City. https://www.madisonthecity.com/wp-content/uploads/Zoning-Ordinance-2024.pdf. The list of uses includes "Churches and other religious institutions." Plaintiff does business as Son Valley, "A ministry of Baptist Homes, Inc." and further describes it as "a Christian community for adults with intellectual and developmental disabilities."

The Board of Aldermen should be given the opportunity to determine that Plaintiff's use met the definition in the Zoning Ordinance of a public/quasi-public use. *See Bryant Woods Inn, Inc. v. Howard County, M.D.*, 124 F. 3d 597, 604 (4th Cir. 1997). ("In enacting the FHA, Congress clearly did not contemplate abandoning the deference that Courts have traditionally shown to such local zoning codes."). It is of no moment that Plaintiff or other governmental agencies may or may not consider the use public or quasi-public. Madison has the authority to make such an interpretation as to its own Zoning Ordinance. Because it was not limited to the enumerated list, the Board could have determined that reasonable accommodation for a group home of persons with intellectual and developmental disabilities should be included as a public/quasi-public use.

Madison was willing to grant the conditional use with certain conditions that would protect the health, safety, and welfare of the residents as well as adjacent property owners. They were all reasonable conditions as one of the residents is 82 years old and blind. (Doc. 77-1, p. 11). For

example, Madison sought to obtain the fire inspection Plaintiff was required to obtain by a private company for purposes of certification by the Mississippi Department of Mental Health. It also placed the condition that the house would be fully sprinkled within a reasonable time. (Doc.86-16, p. 1). The International Fire Code, which Madison has adopted, requires a group home to have a sprinkler system. (Doc. 77-7, p. 47). *See Summers v. Fitchberg,* 940 F. 3d 133, 140 (1st Cir. 2019) (exempting the Plaintiffs from installing sprinklers would not be a reasonable accommodation because such an exemption would thwart the very salutatory purpose of the sprinkler law); *Hemisphere Building Co. v. Village of Richton Park,* 171 F. 3d 437, 440 (7th Cir. 1999) (waiving fire code requirements because of disabled persons financial ability to pay would stretch the FHA (and the ADA) too far); *Board of County Comm's of Johnson City v. Jorgensen*, 544 P. 3d 160 (Kan. Ct. App. 2024) (blanket requests to exempt homes from fire code is not a reasonable accommodation).

### F. The pending status of the rental application did not preclude an appeal from the Zoning Administrator's determination or prevent Plaintiff from pursuing a conditional use.

The Rental Ordinance requires the owner of a rental unit in single household to comply with "all housing codes of the City" and "the Zoning Ordinance." (Doc. 77-13, pp. 7, 8). Thus, the zoning issue and the approval of the rental application go hand in hand. Had Plaintiff obtained a conditional use, Plaintiff could have then had its rental application processed because there would be no violation of the City's Zoning Ordinance. Moreover, Madison was not given sufficient time to even render a decision on the application. Plaintiff submitted the application on January 29, 2024, and filed suit two weeks later.

It is specious to suggest that Madison constructively denied the rental application when Plaintiff filed suit roughly two weeks after submitting the application to the City and less than 24 hours after requesting an accommodation from the City attorney. The City's lack of a decision in

that brief period does not amount to a constructive denial, particularly in light of McCormack's testimony that when he submitted the application, he was told that it would be handled within the next couple of weeks. (Doc. 77-3, pp. 33,35). In any event, Plaintiff's argument is a red herring. Based on Guyton's determination letter, Plaintiff knew its use of the Drayton house as a group home violates the City's Ordinance. Had Plaintiff appealed that determination or sought a conditional use, as required by the City's administrative procedures, it would have resolved both the rental application and the reasonable accommodation request.

In sharp contrast to *Groome Resources*[3], there is no evidence that Madison delayed acting on Plaintiff's request for accommodation or rental application with any intent to prevent or frustrate the purchase of the house or residents move-in. In fact, we now know that Plaintiff had already purchased the Drayton house and moved the residents into the house ***before*** receiving Guyton's June 1, 2023, letter and before obtaining approval by Mississippi Department of Mental Health. ("As a threshold matter, the [June 1] letter merely states that it was brought to the City's attention that the residence was purchased with the intent for it to be used a certain way, and not that Baptist Homes' ***then-current use*** of 405 Drayton Place….") (Doc. 89, p. 8) (emphasis added). More importantly, Madison has taken no action to evict the residents; they remain in Drayton house to this date.

II. **Plaintiff has not adduced admissible evidence establishing a fact issue as to the elements of reasonable accommodation**.

    **A. Plaintiff did not make a request for a reasonable accommodation.**

Contrary to what Plaintiff claims, Madison disputes that the Plaintiff made two valid requests for a reasonable accommodation under the FHA and ADA before it filed suit. While the term "reasonable accommodation" appears in the December 14 letter to Madison, it makes no

---

[3] *Groome Resources, Ltd. V. Parish of Jefferson,* 234 F. 3d 192 (5th Cir. 2000).

mention of a reasonable accommodation under the FHA and ADA. *See One Love Housing, LLC v. City of Anoka, Minnesota,* 93 F. 4th 424, 427 (8th Cir. 2024) (One Love inquired about cities procedure for requesting reasonable accommodations to its zoning ordinances, submitted a letter requesting the city waive the maximum of four unrelated persons, and failure to do so constitutes unlawful discrimination against a disabled group). Moreover, it is disingenuous to suggest that an email sent seven minutes before the close of the business day the day before filing suit is a valid request for reasonable accommodation. A valid request must consist of more than simply using the terminology "reasonable accommodation." It must provide sufficient information that would at least show the connection between the disability and the need for the accommodation so that the City can make an informed decision. *See Perricone-Bernovich v. Tohill,* 843 Fed. App'x 419, 421 (2nd Cir. 2021) (Mere knowledge of disability is insufficient to state a disparate treatment claim).

### B. Plaintiff cannot meet its high burden under the FHA to establish necessity.

"Necessity 'is a high standard' under the FHA and ADA." *One Love Housing, LLC,* 93 F. 4th at 433 (quoting *Vorchheimere v. Philadelphia Owners Assoc.*, 903 F. 3d. 100, 105 (3d Cir. 2018)). "[A] requested accommodation that is preferable to an alternative is not sufficient; it must be essential." *Women's Elevated Sober Living, LLC v. City of Plano, Texas*, 86 F. 4th 1108, 1112 (5th Cir. 2023). "To accept evidence that an accommodation would be better or provide a greater benefit to its residents with disabilities constitutes legal error." *Id*. at 1113. "The FHA requires accommodations necessary to ensure the disabled receive the *same* housing opportunities as everybody else, it does not require *more* or *better* opportunities." *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012) (original emphasis). And it must be necessary to accommodate the disabled persons, not the Plaintiff. *See One Love Housing*, 93 F. 4th at 432 (finding accommodations appeared to be an accommodation for One Love and not the handicapped).

Plaintiff's sole argument regarding necessity is "that the accommodation is necessary to allow the residents the agency to decide the community in which they wish to live." (Doc. 89, p. 18). The Plaintiff offers nothing in support of the claim for necessity much less any evidence of Plaintiff's tenant's desire to live in this particular home. Plaintiff offers no evidence that without the requested accommodation, the tenants will receive no ameliorative effect from their disability. *See Shed v. Johnny Coleman Builders, Inc.*, No. 3:16cv171-NVB-RP, 2017 WL 3624240, at *2 (N.D. Miss. August 23, 2017) ("[the Plaintiff has the] burden of directing the Court to admissible evidence to support the elements of his claims."); *Smith v. Harris County Texas,* 956 F. 3d 311, 316 (5th Cir. 2020) ("When a Defendant moves for summary judgment and identifies a lack of evidence to support the Plaintiff's claim on an issue for which the Plaintiff would bear the burden of proof at trial, then the Defendant is entitled to summary judgment unless the Plaintiff is able to produce 'summary judgment evidence sufficient to sustain a finding in Plaintiff's favor on the issue.'").

Plaintiff attempts to shift the burden to Madison. ("Madison has not presented evidence that the residents are eligible for individual care.") (Doc. 89, p. 19). Plaintiff makes the conclusory statement that the accommodation is necessary "because the residents only have coverage for care in congregate living settings." (Doc. 89, p.19). To survive summary judgment, Plaintiff must submit admissible evidence of such conclusory statements.

Plaintiff's claim that Madison's ordinances "operate to restrict the ability of such individuals with disabilities from living within single-family residential communities" is without merit. Madison's ordinances restrict any groups of unrelated persons who pool their resources to live in community in a R-1 neighborhood. (Doc. 77-8, pp. 73-74; 77-15). As discussed above, the pathway for Plaintiff's group home in any residential neighborhood is through a conditional use. In *Angelicare, LLC v. Saint Bernard Parish,* Civil Action No. 17-7360, 2017 WL 11724648 (E.D.

11

LA.), Plaintiff sought a reasonable accommodation from the Parish so that it could operate a group home. *Id. at \*1.* There, Plaintiffs argued that because group homes were not permitted in an R-1 zone, the Parish's zoning ordinance was discriminatory. *Id. at \*2.* The Court denied Plaintiff's request for injunctive relief holding the ordinance was not facially discriminatory against persons with disabilities. It recognized that the FHA did not do away with the city's right to enforce its zoning ordinances holding:

> Plaintiffs ignore that the group homes they are trying to open are businesses that appear to be wholly inconsistent with the other properties in the neighborhood.

*Id. at \*3.*

As the Court stated in *Bryant Woods Inn, Inc.,* congress did not contemplate abandoning the difference the Courts have traditionally shown to local zoning ordinances. *See* also *FERC v. Mississippi,* 456 U.S. 742, 768 n. 30, 102 S. Ct. 2126, 2141 n. 30 (1982) ("Regulation of land uses is perhaps the quintessential state activity"). *See Tsombanidis v. West Haven Fire Dept.,* 352 F. 3d 565, 580 (2nd Cir. 2003) (superseded by regulation, *Perricone-Bernovoich v. Toehill*, 843 Fed. App'x 419 (2nd Cir. 2021)) ("The city is not required to grant an exception for a group of people to live as a single family, but it cannot deny the variance request based solely on Plaintiff's handicap where the requested accommodation is reasonable."). Ms. Guyton's testimony and prior letters to other groups shows that even if the City were to deny a conditional use, it would not be based upon Plaintiff's tenants' disabilities.

It is Plaintiff's own testimony that establishes that the location is preferable and not essential. Morton testified that there was "nothing magical about this spot." In fact, this was the second house in which an offer to purchase had been made because the first house was "sold out from under us." While he claimed that living in an R-1 was essential to be able to go outside in the neighborhood, Plaintiff had no knowledge of how often the tenants actually go outside. Instead,

Morton testified that it is unimportant how they utilize the opportunity to go outside but that they are given the "ability to" go outside. (Doc. 77-4, pp. 69-73). Plaintiff's claim that this house is essential is rebutted by Mr. McCormack, Plaintiff's long time Executive Director, who testified that its tenants are able to live in supervised community living and pool their resources in apartment complexes. (Doc. 77-3, p. 14; *see also* Doc. 77-4, p. 69).

### C. The requested accommodation is not reasonable.

Plaintiff does not address this issue in its response to Madison's Motion For Summary Judgment. Again, the burden is on the Plaintiff to show that the requested accommodation is reasonable. *See Elder Haven, Inc. v. City of Lubbock,* 98 F. 3d 175, 178 (5th Cir. 1996) (Expressly rejecting the view that the FHA shifts the burden to the Defendant on the question of reasonableness). Plaintiff's failure to even address the issue is fatal to its claim of reasonable accommodation and warrants judgment in Madison's favor.

Even if Plaintiff had addressed the issue, the record evidence indicates that it is not a reasonable accommodation. An accommodation is not reasonable if it requires a fundamental alteration in the nature of the program at issue, which in this case is Madison's regulatory zoning process. *United States v. City of Jackson,* 318 F. Supp. 2d 395, 412 (S.D. Miss. 2002). The Plaintiff's request fundamentally alters Madison's regulatory process by seeking to side-step the process of appeal of a zoning determination or seeking a conditional use. It is in those processes that the City is able to balance the rights afforded under the FHA and ADA with its right to protect the public health, safety, morals, and welfare and that it does not adversely affect the adjacent properties. "In determining whether the reasonableness requirement has been met, the Court may consider…the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations…" *Bryant Woods Inn, Inc.,* 124 F. 3d at 604. The basic purpose of zoning is to bring complimentary land uses together while separating incompatible

ones. *Schwarz v. City of Treasure Island,* 544 F. 3d 1201, 1222 (11th Cir. 2008). Madison has never waived its Zoning Ordinance to allow an unrelated group living together in community. *See Schwarz,* 544 F. 3d at 1221 ("Similarly, if the municipality routinely waives the rule upon request, it would be harder to show that the rule is 'essential.'"). *See Palm Partners Ltd.. Lia. Co. v. City of Oakland Park,* 102 F. Sup. 3d 1334 (S.D. Fla. 2015) (upholding denial because there was "no evidence that the city has relaxed the rule in the past, let alone that it routinely waives it upon request"). Thus, when Congress still gives deference to local zoning laws, the fact that the city itself views the rule as essential is significant. *Id. at 1348-50.* Plaintiff's request alters Madison's zoning scheme by refusing to engage in the process afforded under Madison's Zoning Ordinance.

"Congress did not intend for the act to remove handicap people from the normal and usual incidents of citizenship, such as participation in the public components of zoning decisions, to the extent that participation is required of all citizens whether or not they are handicap." *Oxford House-C v. City of St. Louis,* 77 F. 3d 249, 253 (8th Cir. 1996). Like Oxford House, Plaintiff appears to have employed a strategy of ignoring local laws and tries to present Madison with a *fait accompli* by moving into the Drayton house without seeking prior approval. The Plaintiff purchased the house in May, 2023. As pointed out above, Plaintiff apparently had moved their tenants into the Drayton house prior to receiving Guyton's letter. Plaintiff seeks to side-step the usual incidence of citizenship by refusing to either appeal the zoning determination and/or seek a conditional use. Plaintiff's position is that the FHA and ADA entitle them to live wherever they so choose regardless of any other conditions even when there is "nothing magic" about the location.

WHEREFORE, PREMISES CONSIDERED, the City of Madison, Mississippi, respectfully requests that the Court enter the relief set forth in its Motion for Summary Judgment.

This, the 12th day of December, 2025.

                                          Respectfully submitted,

                                          **CITY OF MADISON, MISSISSIPPI,**
                                          **A MUNICIPAL CORPORATION**

                              BY:    *s/ Kelly D. Simpkins*
                                          Kelly D. Simpkins (MSB #9028)
                                          One of Its Attorneys

OF COUNSEL:

Kelly D. Simpkins (MSB #9028)
Lana E. Gillon (MSB #9548)
WELLS MARBLE & HURST, PLLC
300 Concourse Boulevard, Suite 200
Ridgeland, Mississippi 39157
Post Office Box 131
Jackson, Mississippi 39205-0131
Telephone:    (601) 605-6900
Facsimile:     (601) 605-6901
ksimpkins@wellsmarble.com
lgillon@wellsmarble.com

*Special Counsel for the City of Madison, Mississippi*

Chelsea H. Brannon, Esq.
City of Madison, Mississippi
1004 Madison Avenue
Madison, Mississippi 39110
Post Office Box 40
Madison, Mississippi 39130
Telephone:  (601) 856-7116
Facsimile:   (601) 853-4766
cbrannon@madisonthecity.com

*Counsel for the City of Madison, Mississippi*

                                                                           /#295846