UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BAPTIST HOMES, INC.                                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 3:24-CV-92-KHJ-MTP

CITY OF MADISON, MISSISSIPPI                                          DEFENDANT

ORDER

Before the Court is Defendant the City of Madison's ("City") [77] Motion for

Summary Judgment and Plaintiff Baptist Homes, Inc.'s ("Baptist Homes") [79]

Motion for Summary Judgment. For the reasons below, the Court grants in part

and denies in part both motions.

I.      Background

This case stems from Baptist Homes's desire to rent out a home to

individuals with disabilities. The City said that use violates the property's single-

family zoning. Baptist Homes sued under the Fair Housing Act ("FHA") and the

Americans with Disabilities Act ("ADA").

Baptist Homes is a nonprofit that provides support services to Mississippians

with intellectual, developmental, and other disabilities. Compl. [1] ¶ 1; Morton Dep.

[79-1] 20:8–12. Those services include "residential support services provided in the

private residences of persons with disabilities upon their request and only as

necessary for individuals to live as independently as possible." [1] ¶ 1; 12/14/2023

Morton Letter [79-3] at 1.

In May 2023, Baptist Homes bought a house in Crescent Landing Subdivision at 405 Drayton Place in Madison, Mississippi. Warranty Deed [77-2]. Baptist Homes intended to lease the house to four unrelated adults with disabilities and to provide necessary in-home support services. [79-3] at 1.

In June 2023, the City's Director of Community Development ("Director") heard about the intended use of the house and wrote a letter to Baptist Homes. Guyton Dep. [79-4] 13:20–24; 19:12–20:7. The letter stated:

> It was brought to our attention that this residence was purchased to be used as multi-family, a medical facility, or a boarding house. The property is currently zoned R-1 (Single-family residential). Multi-family or commercial uses are not an allowable use in this zoning district. Please contact me if you would like to further discuss this matter.

06/01/2023 Guyton Letter [79-8]. After receiving the letter, Baptist Homes's president Ron Morton ("Morton") called the Director and explained Baptist Homes's plan for the property. Morton Dep. [77-4] 32:22–33:3; [79-4] 22:5–23:5. The Director maintained that it sounded like a boarding house. [79-4] 23:3–5. But she gathered Morton was "unsure as to [her] interpretation," so after the phone call, she spoke to the City Attorney about the matter. *Id.* 25:5–21.

Morton also tried to contact the City Attorney several times, but he was unable to reach her. [77-4] 33:25–34:4; [79-3] at 1. So he called the Director again in December 2023. [77-4] 33:15–34:9; [79-4] 25:24–27:9. During this phone call, he requested a meeting with the City Attorney. [79-4] 26:21–27:9. The Director confirmed that Morton could meet with the City Attorney and that the Director "would pass the information along to [the City Attorney]." *Id.* Morton understood this to mean the Director would coordinate the meeting. [79-3] at 1–2. But the

Director assumed Morton would contact the City Attorney to schedule the meeting. [79-4] 47:16–48:14.

A few days after the phone call, Morton had not heard back about a meeting with the City Attorney, so he sent a letter to the Director. [79-3]. In it, he expressed his desire "to move forward with leasing this property" and his intent to "begin filing the necessary applications and other prerequisites to residential leasing." *Id.* at 2. He also stated:

> Insofar as the City has concluded that the lease of this premises to four developmentally disabled adults residing together as a single household unit is inconsistent with the property's R-1 zoning designation, please provide me with the basis for this conclusion, and consider this letter our formal request for a reasonable accommodation of that inconsistency.

*Id.*

Several weeks later, Morton still had not heard back from the City, so he moved forward with the leasing process. Among other steps to prepare the house for rental, he submitted to the City an application for a license to rent the house. Licensing Application [77-11]; Application Checklist [77-12].

Two weeks later, he emailed the City Attorney reaffirming Baptist Homes's plan to rent the house and again requesting a "reasonable accommodation" to the extent the City found the use violated the zoning ordinance. 02/12/2024 Email [77-14] at 1.

The next day, Baptist Homes sued. *See* [1]. It had been 61 days since Morton sent his first letter with the "reasonable accommodation" language and 15 days since he submitted Baptist Homes's rental license application. *See* 12/14/2023

Letter [77-10] ("reasonable accommodations" sought December 14, 2023); [77-12] at 3 (rental application filed January 29, 2024); [1] (suit filed February 13, 2024).

Baptist Homes raises claims under the FHA and ADA and requests damages and declaratory and injunctive relief. [1] ¶¶ 34–44. The City and Baptist Homes both move for summary judgment. Def.'s Mot. for Summ. J. [77]; Pl.'s Mot. for Summ. J. [79].

II.    Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (citation modified). And a movant is "entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.'" *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (citation modified).

The Court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified). "The

sole question is whether a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor." *Id.* (citation modified).

III.    Analysis

Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter." 42 U.S.C. § 3604(f)(1)(A). And the ADA prohibits people with disabilities from being "excluded from participation in or [being] denied the benefits of the services, programs, or activities of a public entity, or [being] subjected to discrimination by any such entity." 42 U.S.C. § 12132. Because these statutes have similar goals and requirements, courts can address claims relating to these statutes collectively. *Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 n.2 (5th Cir. 2018).

Baptist Homes alleges the City violated the FHA and ADA by hindering Baptist Homes's ability to rent its house to four people with disabilities.[1] *See* [1] ¶¶ 34–44. The City moves for summary judgment because the claims are unripe and fail as a matter of law. *See generally* [77]. Baptist Homes moves for summary

---

[1] The parties each move for summary judgment on only one of Baptist Homes's FHA claims—failure to provide reasonable accommodations under 42 U.S.C. § 3604(f)(3)(B). [77]; [78] at 1; [79]; [80] at 21. But the [1] Complaint cites other sections of the FHA that give rise to separate causes of action. [1] ¶ 36; *see also, e.g.*, *Providence Behav. Health*, 902 F.3d at 457 (Section 3604(f)(1) creates a cause of action for intentional discrimination based on a disability). Since the parties only brief the failure-to-provide-reasonable-accommodations claim, the Court does not address the other FHA sections referenced in the [1] Complaint.

judgment because its claims succeed as a matter of law. *See generally* [79]. The Court addresses each motion in turn.

    A.  The City's [77] Motion for Summary Judgment

    1.  Ripeness

The City first argues Baptist Homes's claims are not ripe for adjudication because the City never issued a final decision on the reasonable accommodation. Def.'s Mem. in Supp. [78] at 10. The Court disagrees.

Ripeness implicates jurisdiction. *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 198–99 (5th Cir. 2000). It has "both constitutional and prudential dimensions." *Umphress v. Hall*, 133 F.4th 455, 467 (5th Cir. 2025). A case lacks ripeness when it is "abstract or hypothetical." *Groome*, 234 F.3d at 199 (citation modified). The "key considerations" of a ripeness inquiry are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (citation modified); *see also Umphress*, 133 F.4th at 468. "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Groome*, 234 F.3d at 199.

So the Court considers whether Baptist Homes's FHA and ADA claims are ripe. Are they "abstract or hypothetical"? Or do they present "purely legal" questions fit for judicial decision? The latter—the City denied Baptist Homes's request for reasonable accommodations, and Baptist Homes responded with a lawsuit.

Start with "the fitness of the issues for judicial decision." *Id.* An FHA and ADA "violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings." *Id.* (citation modified). The "denial can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial." *Id.*

The City argues that Baptist Homes's claims are unripe because Baptist Homes bypassed the City's administrative procedures and, therefore, the City never made a "final decision" on Baptist Homes's accommodation request. [78] at 15. This argument has two flaws. First, the City admits it does not have specific reasonable-accommodation procedures. Second, even if the City never formally denied Baptist Homes's request, it constructively did so by ignoring the request for more than 60 days.

The City argues Baptist Homes did not use proper procedures to obtain a final decision on the reasonable-accommodation request. [78] at 10. The City says Baptist Homes should have appealed the Director's June 2023 letter to the Board of Aldermen or applied for a conditional use permit. Def.'s Reply [92] at 4. Because Baptist Homes did not do so, the City contends the claims are not ripe for adjudication. But neither of these avenues would give Baptist Homes the result it seeks.

First, the City's zoning ordinance does not list a zoning verification letter as an appealable decision. *See* [77-1] at 50 (listing these applications as appealable: building permit, change of use permit, dimensional variance, special exception or

rezoning). And even if the June 2023 letter were appealable, an appeal would not result in Baptist Homes receiving a reasonable accommodation. The June 2023 letter explained that Baptist Homes's use of the house violated the zoning ordinance. 06/01/2023 Letter [77-9]. Appealing this letter would mean challenging whether Baptist Homes's use of the house violated the zoning ordinance. But Baptist Homes does not argue that its use falls within the zoning ordinance. Instead, it seeks a reasonable accommodation. [89] at 9.

Second, the City's conditional use permit is different from a reasonable accommodation. The City's Zoning Ordinance allows the Mayor and the Board of Aldermen to grant a conditional use permit in R-1 zones for public or quasi-public facilities and utilities, child care facilities, inns, and railroads. [77-1] at 29. The City contends Baptist Homes should have applied for a conditional use under the public or quasi-public facility category. [92] at 7. But conditional use permits are given for land uses that "with certain restrictions or conditions, would in the judgment of the Mayor and the Board of Aldermen, promote the public health, safety, morals, or general welfare of the City and would not adversely affect adjacent properties." [77-1] at 14. Conversely, the FHA's "reasonable accommodations provision exists as a prohibition on discrimination against the disabled in the purchase, sale, or rental of housing," and "the failure to reasonably accommodate the disabled in the context of housing is, itself, a defined act of discrimination." *Groome*, 234 F.3d at 202.

Put differently, the City's conditional use permits impose restrictions on the land's use and are awarded at government officials' discretion. FHA and ADA

reasonable accommodations impose no restrictions but allow exceptions to accommodate disabilities. And these accommodations are required by law. *See* 42 U.S.C. §§ 3604(f)(3)(B), 12132. Baptist Homes does not seek a discretionary determination by the Mayor and the Board of Aldermen that people with disabilities should be permitted to use the house with certain restrictions or conditions. It seeks reasonable accommodations to allow people with disabilities to live in an R-1 zone even if their living together violates the zoning ordinance. So the Court disagrees with the City's argument that Baptist Homes had to apply for a conditional use permit in order to obtain reasonable accommodations. *See Groome*, 234 F.3d at 201–02 (explaining that the FHA's reasonable accommodations provision "specifically targeted the type of zoning regulations at issue here," as Congress found that "seemingly 'neutral rules and regulations,' even those involving commercial/noncommercial zoning distinctions, nonetheless had a discriminatory effect on the housing choices available for the disabled.").

The Director admitted that the City does not have "any specific written procedures concerning the process to request a reasonable accommodation under the [FHA] or [ADA]." [77-8] 41:13–18. She said to receive reasonable accommodations, one should reach out to the Mayor and the Board of Aldermen. [77-8] 42:23–45:14. And to get in touch with the Mayor or the Board of Aldermen, the requester could bring their request to the City. *Id.* In other words, a person could contact the City to initiate the reasonable-accommodation process. [79-4] 57:14–58:1.

9

Morton contacted the City in June 2023 when he spoke to the Director about Baptist Homes's use of the house. [77-8] 22:5–23:5. He told her Baptist Homes planned to house intellectually disabled people. *Id.* 22:21–23:2. In his December 2023 letter, Morton reiterated that Baptist Homes "plans to lease [the] property to four unrelated individuals with disabilities" and told the City to consider the letter its "formal request for a reasonable accommodation." [77-10] at 1–2. The Director received the letter and even showed the City Attorney. [77-8] 49:10–18. In the absence of a clear procedure, this letter suffices as a request for an FHA and ADA reasonable accommodation.

An "indeterminate delay" in responding to a request for reasonable accommodations qualifies as a denial. *Groome*, 234 F.3d at 199. Baptist Homes sued the City after 61 days passed with no response to the reasonable accommodations. *See* [77-10]; [1]. Some delay in approving requests for reasonable accommodations is inevitable. *See Sabal Palm Condos. of Pine Island Ride Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1292 (S.D. Fla. 2014). But here, the City's deliberate non-engagement—not mere administrative delay—distinguishes this case from one where a municipality is simply backlogged.

In *Groome*, the Fifth Circuit found the "district court was well within its discretion to decide that a reasonable accommodation was denied by the unjustified delay of the Parish officials." 234 F.3d at 199. There, the plaintiff sued after its application had been pending for 95 days even though the parish's policy was to rule on applications within 45 days of receipt. *Id.* The parish officials gave no "timetable

10

or plan for acting on the application," so the plaintiff had to postpone its closing date on the property. *Id.*

Here, the City knew about Baptist Homes's intended use for the house since June 2023 and knew about the request for reasonable accommodations since December 2023. Neither party cites a timeframe within which the City aims to respond to applications or requests for reasonable accommodations. During the 61 days between the request and this suit, Baptist Homes submitted a rental licensing application, called the City to ask about the necessary inspections for the property, and called the City Attorney. [77-4] 25:2–26:3; *see also* [77-3] 32:21–33:20. Despite these efforts, Baptist Homes heard nothing from the City about its accommodations request. The City Attorney ignored Baptist Homes's call just as she had several of Baptist Homes's prior phone calls. [77-4] 25:22–25; *see also* [77-4] 33:25–34:4.

Thus, the City left Baptist Homes with no "timetable or plan for acting on the application" for 61 days before Baptist Homes sued. *Groome*, 234 F.3d at 199. The record shows that the right people received the request, conferred about it, and said nothing in response. So the City's 61-day silence on Baptist Homes's accommodation request qualifies as an indeterminate delay.

Now consider the second factor of the ripeness inquiry—"the hardship to the parties of withholding court consideration." *Id.* The Fifth Circuit has held that "housing discrimination causes a uniquely immediate injury." *Id.* at 200. And in addition to the discriminatory issue, FHA plaintiffs may face "concrete economic hardship from the continued delay." *Id.* Here, Baptist Homes cannot collect rent for

11

this house from the individuals with disabilities because the City refuses to allow an accommodation.[2] So Baptist Homes faces concrete economic injury from continued delay. *See United States v. City of New Orleans*, No. 12-2011, 2012 WL 6085081, at *6 (E.D. La. Dec. 6, 2012) (Plaintiff's FHA and ADA claims were ripe because plaintiff "may well have incurred specific economic damages from the delay in commencing operations and the foregone use of the property.").

In sum, Baptist Homes's claims are ripe because the City constructively denied the request for reasonable accommodation and because withholding court consideration would cause hardship.

### 2. Merits

The City next argues Baptist Homes's failure-to-accommodate claim fails as a matter of law. [78] at 17.

To prove that the City failed to accommodate, Baptist Homes "must demonstrate that (1) the residents of the affected dwelling or home suffer from a disability, (2) they requested an accommodation from the defendant, (3) the requested accommodation was reasonable, and (4) the requested accommodation was necessary to afford the residents equal opportunity to use and enjoy the home." *Women's Elevated Sober Living L.L.C. v. City of Plano, Tex.*, 86 F.4th 1108, 1112 (5th Cir. 2023).

---

[2] The residents with disabilities currently live at the house "as [Baptist Homes's] guests." [77-4] 59:14–19. Though they still pay Baptist Homes rent under a prior lease for a different house, Baptist Homes cannot collect rent for the Drayton Place house. *Id.* 60:19–22; 61:24–62:18. And Baptist Homes cannot rent out the other house to someone else because the residents' names are still on that lease. *Id.*

The City admits Baptist Homes meets the first element but claims it fails on the others. [78] at 17.

a.  Request

The City argues Baptist Homes never requested a reasonable accommodation under the FHA and ADA. *Id.*

The Court has already explained why Baptist Homes *did* make a reasonable-accommodation request. *Supra* Section III.A.1. The City complains that the December 2023 letter did not "mention that the request for accommodation was being made under the FHA or ADA, much less why such request was reasonable and necessary." *Id.* at 18. But this specific language is not required in a request for reasonable accommodations.

In *Mueck v. La. Grange Acquisitions, L.P.*, the Fifth Circuit explained that "special words, like 'reasonable accommodation,' need not be uttered, but the [plaintiff] must explain that the proposed adjustment . . . is for a medical condition-related reason." 75 F.4th 469, 486 (5th Cir. 2023) (citation modified). Though *Mueck* is an employment case, its logic stands in this context. Baptist Homes's December 2023 letter used the "special words" mentioned in *Mueck*—it specifically requested a "reasonable accommodation." [77-10]. But the City argues the request is inadequate because it left out other "special words"—citations to the exact statutes and an explanation of why the accommodation was reasonable and necessary. Not so. The letter made clear that Baptist Homes sought a reasonable accommodation to lease

the house to four unrelated individuals with disabilities. [77-10]. Under *Mueck*, this is a sufficient request for reasonable accommodations under the FHA and ADA.

      b.  Reasonableness

The City purports to challenge the reasonableness of the accommodation, but its arguments on this point concern the reasonableness of the *method* of requesting the accommodation, not the reasonableness of the accommodation itself. *See* [78] 17–18. Thus, the City does not substantively challenge the reasonableness of the accommodation, so the Court denies summary judgment on this element.

      c.  Necessity

The City argues the requested accommodation is unnecessary because other housing options exist for the four individuals with disabilities. [78] at 18–19. This argument does not warrant summary judgment.

An accommodation is necessary when it "makes the home either 'financially viable' or 'therapeutically meaningful.'" *Women's Elevated Sober Living*, 86 F.4th at 1112. But "a requested accommodation that is preferable to an alternative is not sufficient; it must be essential." *Id.* For example, a "requested accommodation from capacity restrictions must directly ameliorate the effect of the plaintiffs' disabilities, such that the requested number *must* reside together in a dwelling to achieve effective amelioration of their afflictions." *Id.* (emphasis in original). Put differently, an accommodation is necessary when without it, the person with disabilities is deprived of "the opportunity to use and enjoy the dwelling of their choice as compared to those without disabilities." *Id.*

14

The City argues the requested accommodation is unnecessary because the four individuals with disabilities could move back to their old house in Jackson. [78] at 18–19. In response, Baptist Homes says the accommodation "is necessary because Madison's zoning and rental ordinances effectively prohibit individuals with intellectual and developmental disabilities—who receive necessary Medicaid-funded support services tied to specific care settings—from residing together as a family in their chosen community, if such community is zoned R-1." [89] at 17. It further explains "the residents only have coverage for care in congregate living settings, and Madison's zoning and rental ordinances operate to restrict the ability of such individuals with disabilities from living within single-family residential communities." *Id.* at 19.

The Court agrees with Baptist Homes that the availability of another house in another city does not prove the accommodation in this City is unnecessary. The question is whether the accommodation is "necessary to afford [a person with disabilities] equal opportunity to use and enjoy a dwelling," not whether the accommodation is necessary to provide the person with housing at all. *Women's Elevated Sober Living*, 86 F.4th at 1112 (quoting 42 U.S.C. § 3604(f)(3)(B)). Put differently, accommodations in this City could still be necessary even though alternative housing is available in another city.

So the Court denies the [77] Motion on this element.

### 3.  Punitive Damages

The City claims it is entitled to summary judgment on Baptist Homes's request for punitive damages because the FHA does not expressly authorize punitive damages against a municipality. [78] at 19–20. In response, Baptist Homes says that "an award of attorney's fees is not punitive." [89] at 19. But the City never argued that attorneys' fees should be considered punitive damages.

The [1] Complaint requests punitive damages under the FHA. *See* [1] at 14 (citing 42 U.S.C. § 3613(c)(1)). It separately requests attorneys' fees under the FHA. *Id.* (citing 42 U.S.C. § 3613(c)(2)). So the City's [77] Motion clearly challenged the request for punitive damages, not for attorneys' fees. By failing to respond to the City's argument, Baptist Homes abandoned its request for punitive damages. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("[A] party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings.").

Even if Baptist Homes had not abandoned its punitive-damages claim, the City would be entitled to summary judgment on it. Municipalities are generally immune from punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Nothing in Section 3613(c)(1) clearly expresses congressional intent to abrogate that immunity.

### B.  Baptist Homes's [79] Motion for Summary Judgment

Baptist Homes also moves for summary judgment, claiming it has proven all elements of its claims. [79]; [80] Pl.'s Mem. in Supp.

Again, to prove its claim, Baptist Homes "must demonstrate that (1) the residents of the affected dwelling or home suffer from a disability, (2) they requested an accommodation from the defendant, (3) the requested accommodation was reasonable, and (4) the requested accommodation was necessary to afford the residents equal opportunity to use and enjoy the home." *Women's Elevated Sober Living*, 86 F.4th at 1112. The City does not dispute the first element. [78] at 17. And the Court has already explained that Baptist Homes requested an accommodation from the City. *Supra* Section III.A.1. Thus, the Court grants summary judgment for Baptist Homes on the first two elements and addresses the remaining elements below.

  1. Reasonableness

Baptist Homes fails to meet the summary-judgment burden as to reasonableness of the requested accommodation.

An accommodation is reasonable "unless it imposes an undue financial and administrative burden on the defendant or requires a fundamental alteration in the nature of the program at issue, which in this case is the City's zoning scheme." *United States v. City of Jackson, Miss.*, 318 F. Supp. 2d 395, 412 (S.D. Miss. 2002), *aff'd*, 359 F.3d 727 (5th Cir. 2004); *see also Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 n.12 (5th Cir. 2005). Baptist Homes bears the burden of proof on the question of reasonableness. *Elderhaven, Inc. v. City of Lubbock, Tex.*, 98 F.3d 175, 178 (5th Cir. 1996) (The Fifth Circuit "reject[s] the suggestion of certain courts

that a Fair Housing Act defendant bears the burden of proof on the question of reasonableness.").

Baptist Homes requested a reasonable accommodation in the form of allowing four individuals with disabilities to live in a neighborhood even though their living there violates the City's zoning ordinance. Baptist Homes says this request is reasonable because the "residence's activities accord with single-family use." [80] at 14. To support this argument, Baptist Homes insists it provides its inhabitants "'a demonstrably residential, noninstitutional living environment' and therefore is 'fully compatible with the traditional objectives and values associated with single-family residential neighborhoods.'" [80] at 14 (citing Mem. Op. and Order [34], *United States v. City of Jackson, Mississippi*, No. 3:96-cv-419WS, (S.D. Miss. Oct. 14, 1997)). This statement is conclusory.

In response, the City underscores the lack of evidence to support Baptist Homes's arguments and says the residents fundamentally alter the nature of a single-family neighborhood because they "are charged rent to participate in a staffed supervised service program in the home." [87] at 22. The City also attaches as evidence letters reprimanding other homeowners for renting their house to multiple unrelated tenants, further suggesting such use alters the nature of the R-1 zone. Letters [86-15]. Baptist Homes's [91] Reply references evidence explaining the nature of the individuals' relationships as a "family." Pl.'s Reply [91] at 8. But the Court finds this insufficient to overcome the factual dispute over whether the use of the house fundamentally alters the nature of the zone. Drawing all inferences in

18

favor of the City, a reasonable jury could find the nature of a staff-supervised service program taking place in a house with multiple unrelated tenants conflicts with the nature of an R-1 zone. *See Guzman*, 18 F.4th at 160 (citation modified).

Baptist Homes raises two more points to support its reasonableness argument. First, it asserts "no neighbors have voiced complaints about [the individuals'] presence or the presence of Baptist Homes's staff." [80] at 14. But it cites no summary judgment evidence confirming this point. Second, it claims the City cannot take issue with "commercial aspects of Baptist Homes' ownership" because the City allows some other commercial operations within the R-1 zone. *Id.* at 14–15. That other commercial entities can receive a conditional use permit to operate in R-1 zones does not entitle Baptist Homes to summary judgment on this element.

The Court finds Baptist Homes has not met its burden of proving that a reasonable jury drawing all inferences in the City's favor could not arrive at a verdict for the City. *See Guzman*, 18 F.4th at 160 (citation modified). So the Court denies summary judgment on the reasonableness element.

### 2. Necessity

Baptist Homes likewise fails to meet the summary-judgment burden as to necessity of the requested accommodation.

An accommodation is necessary when it "makes the home either 'financially viable' or 'therapeutically meaningful.'" *Women's Elevated Sober Living*, 86 F.4th at 1112. But "a requested accommodation that is preferable to an alternative is not

19

sufficient; it must be essential." *Id.* For example, a "requested accommodation from capacity restrictions must directly ameliorate the effect of the plaintiffs' disabilities, such that the requested number *must* reside together in a dwelling to achieve effective amelioration of their afflictions." *Id.* (emphasis in original). Put differently, an accommodation is necessary when without it, the person with disabilities is deprived of "the opportunity to use and enjoy the dwelling of their choice as compared to those without disabilities." *Id.*

Baptist Homes does not argue group living is necessary because of its "therapeutic effect." [80] at 16. Instead, it says group living is necessary because the residents are entitled to the "ability to choose to live in the community of their choice, and, at the same time, receive the kind of services available to individuals on an ID/DD waiver." *Id.* Reading this in context with the rest of the argument, Baptist Homes seems to assert that the accommodation makes the home financially viable. *See Believe TGH, LLC v. Pointe Coupee Par., La.*, No. 23-CV-408-SDD-RLP, 2023 WL 8791676, at *3–4 (M.D. La. Dec. 19, 2023) (discussing financial viability). But the City argues the requested accommodation is merely preferential, not necessary. [87] at 25.

In its [91] Reply, Baptist Homes points to depositions that explain "[b]ecause of their disabilities, none of the residents has a job, and Medicaid or other programs pay for all of the costs of their living." [91] at 11. Through "Medicaid's ID/DD waiver program," the residents receive coverage for congregate living services so long as "the cost to the State of Mississippi does not exceed the cost of institutionalized

care." [91] at 11. Baptist Homes says "[b]ut for the existence of support services providers like Baptist Homes, disabled individuals who qualify for Medicaid coverage and require support services would not be able to live a life comparable to non-disabled individuals." *Id.* But Baptist Homes does not point to specific summary judgment evidence to prove this financial dilemma.

The evidence suggests the residents cannot live alone and have Medicaid cover their living services or otherwise afford these living arrangements. *See* [79-1] at 113:24–115:23. So to make the house financially viable, the residents must live as a group. The City's problem with Baptist Homes's use of the house is that it constitutes a group home, a term it uses interchangeably with boarding house. *See* [87] at 22; [79-4] 18:3-7. The City's zoning ordinance provides that a boarding house consists of "three or more" people. [79-5] at 3. Though Baptist Homes's evidence suggests the residents need to live in groups, it does not necessarily prove they have to live in a way that violates the Zoning Ordinance. For example, without more evidence, it remains unknown whether it could be financially viable for the residents to live as a group of two and thus not in violation of the Zoning Ordinance's ban on "group homes." *See Harmony Haus Westlake, L.L.C. v. Parkstone Prop. Owners Ass'n*, 851 F. App'x 461, 467 (5th Cir. 2021) (A finding that a living situation "is not financially viable with six residents is not sufficient to show that 12 residents are necessary for it to be financially viable.").

So Baptist Homes fails to satisfy its burden at this stage of showing that the accommodation is "indispensable, requisite, essential, needful, . . . absolutely

21

required" or "cannot be done without." *Women's Elevated Sober Living*, 86 F.4th at 1112 (citation modified).

IV.    Conclusion

For the reasons above, the Court grants the City's [77] Motion for Summary Judgment as to the request for punitive damages but denies it in all other respects. And the Court grants Baptist Homes's [79] Motion for Summary Judgment on elements one and two of the failure-to-provide-reasonable-accommodations claim but denies it in all other respects. In doing so, the Court has considered all the parties' arguments. Those arguments not addressed would not have altered the Court's decision.

SO ORDERED, this 11th day of May, 2026.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE

22